**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JUSTIN O'CONNOR, on behalf of himself and all other similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 19-cv-5045 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| FORD MOTOR COMPANY, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Justin O'Connor ("Plaintiff") brings this putative class action complaint against Defendant Ford Motor Company ("Defendant" or "Ford") for damages allegedly arising out of Defendant's sale and lease of 2017 to 2019 Model Year Ford F-150 trucks with defective 10R80 10-speed automatic transmissions. Currently before the Court is Defendant's motion to dismiss the governing first amended complaint [23].[1] For the following reasons, Defendant's motion to dismiss [23] is granted. The dismissal is without prejudice to filing a second amended complaint by September 8, 2020. With that said, as the analysis that follows indicates, the Court is skeptical that Plaintiff's warranty and negligence claims are salvageable, but less dubious about the possibility that Plaintiff's ICFA and unjust enrichment claims can be successfully replead. In an abundance of caution, however, the Court will not place any limits on Plaintiff's opportunity to take one more shot at stating his claims. If Plaintiff files a second amended complaint, Defendant

---

[1] By agreement of the parties, three cases originally filed in other districts were transferred to this District and then reassigned to this Court as related under Local Rule 40.4. In this District, those cases were *Marino v. Ford Motor Co.*, No. 20-cv-1981, *Orndorff v. Ford Motor Co.*, No. 20-cv-2095, and *Smith v. Ford Motor Co.*, No. 20-cv-2612. Also, by agreement of the parties, all four related cases have been consolidated under Federal Rule of Civil Procedure 42(a), with all further filings to be made in this docket, and the three other cases administratively closed.

will be given until October 6, 2020 to file a responsive pleading. If Plaintiff does not intend to file a second amended complaint, he should file a statement to that effect and the Court will set the matter for a telephonic status hearing.

## I.    Background

The following facts are taken from Plaintiff's governing first amended complaint [7]. All well-pled allegations in the complaint are assumed to be true for purposes of Defendant's motion to dismiss. See *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017). In July 2018, Plaintiff leased a 2018 Ford F-150 XLT 3.5 EcoBoost with 10R80 10-speed transmission from Fox Valley Ford (now called Gerald Ford) in North Aurora, Illinois. The vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Defendant Ford. Plaintiff proposes to bring this lawsuit on behalf of a class ("Class") of similarly situated individuals composed of persons in Illinois who formerly owned or currently own or lease a 2017 to 2019 Model Year Ford F-150 truck with a 10R80 10-speed automatic transmission ("Vehicles").

This lawsuit concerns alleged defects in the Vehicles' 10R80 10-speed automatic transmission ("Transmission"). Plaintiff explains that an automatic transmission is essentially an automatic gear shifter. Instead of manually shifting the gears with a clutch, the automatic transmission does it on its own. The transmission acts as a powertrain to convert the vehicle engine's force into a controlled source of power. Accordingly, drivers need a properly functioning automatic transmission in order to safely and reliably accelerate and decelerate their Vehicles. Plaintiff alleges that Defendant knew or should have known that the Vehicles contained a design and/or manufacturing defect ("Transmission Defect") that can cause the Transmissions to shift harshly, slip gears, hesitate, or surge. Plaintiff alleges that, because of the Defect, the Vehicles are likely to suffer serious damages and potentially catch fire if accidents occur, causing an

unreasonable and extreme risk of serious bodily harm or death to the Vehicles' occupants and others in the vicinity. Yet, according to Plaintiff, Defendant failed to disclose the defect to Plaintiff or the proposed class members at the time they purchased or leased their Vehicles or any time after. Plaintiff alleges that had he or the other proposed class members known about the defective Transmissions at the time of sale or lease, they would not have purchased their Vehicles or would have paid less for them. Plaintiff allegedly "paid and continues to pay a premium for a defective vehicle which poses a safety hazard to himself, his family, and others." [7] at 9.

Plaintiff alleges that since the 10R80 Transmission was introduced, "drivers have repeatedly complained about difficulty shifting and vehicle lunging and/or jerking to Ford." [7] at 9; see also *id.* at 7-16 (providing numerous examples of complaints submitted to the National Highway Transportation Safety Administration's ("NHTSA") website). As a result of these complaints, Defendant allegedly knew or should have known by 2018 through sufficient product testing or other methods that the Vehicles contained the Transmission Defect. Upon information and belief, Defendant issued multiple Technical Service Bulletins ("TSBs") addressing the shifting problems. The TSBs stated that 2017 and 2018 F-150 vehicles "may exhibit harsh/bumpy upshift, downshift and/or engagement concerns" and suggested reprogramming the powertrain control module ("PCM"). [7] at 10, ¶ 45. The TSBs further stated that the Class Vehicles were "equipped with an adaptive transmission shift strategy which allows the vehicle's computer to learn the transmission's unique parameters and improve shift quality." *Id.* They advised that "[w]hen the adaptive strategy is reset, the computer will begin a re-learning process," which "may result in firmer than normal upshifts and downshifts for several days." *Id.* However, Plaintiff alleges on information and belief, Defendant's "adaptive transmission shift strategy" fails to remedy the shifting problems reported in Class Vehicles. *Id.* at 10, ¶ 46. Despite knowing this, Defendant

allegedly took no further steps to remedy the issue, leaving Plaintiff and the other Class Members with knowingly defective Class Vehicles. Defendant has not recalled the Class Vehicles to repair the Transmission Defect and has not offered to reimburse Class Vehicle owners and lessees who incurred costs relating to the transmission problems.

Plaintiff alleges that the Transmissions are covered by express and/or implied warranties. In particular, Defendant offers a "New Vehicle Limited Warranty" for three years or 36,000 miles, whichever occurs first. [7] at 6. Defendant also offers extended warranty coverage for Powertrain components for five years or 60,000 miles, whichever occurs first. This extended warranty coverage includes the transmission and all internal parts, clutch cover, seals and gaskets, torque converter, transfer case (including all internal parts), transmission case, and transmission mounts. Nonetheless, Plaintiff alleges on information and belief, "Ford refuses to replace or repair the Transmissions and merely states that the abrupt and harsh shifting is normal." *Id*. at 2, ¶ 7; see also *id.* at 7, ¶ 31.

Based on these allegations, Plaintiff brings a federal claim for violation of the Magnuson-Moss Warranty Act and Illinois state law claims for breach of express warranty, breach of implied warranty, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), negligence, and unjust enrichment. Plaintiff requests that the Court certify the action as a class and seeks actual, punitive, and statutory damages, injunctive relief, attorneys' fees, costs, and pre- and post-judgment interest.

More specifically, in his first claim, for breach of express warranty, Plaintiff alleges that Ford expressly warranted in writing that the vehicles were covered by certain warranties in Ford's "New Vehicle Limited Warranty." [7] at 22. The warranty states that "authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that

4

malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in the factory-supplied materials or factory workmanship." *Id*. Plaintiff alleges that "Ford breached its express warranties to repair defects in materials and workmanship of any part supplied by Ford" and that "Ford has not repaired, and has been unwilling to reasonably repair, the Transmission Defect." *Id*. Plaintiff further claims that "the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and Class Members whole and because Ford has failed and/or has refused to adequately provide the promised remedies within a reasonable time." *Id*. Accordingly, Plaintiff submits, recovery by Plaintiff and the Class is not limited to the express warranties of repair to parts defective in materials or workmanship.

In his second claim, for breach of implied warranty, Plaintiff alleges that Defendant had actual knowledge of and received timely notice regarding the Transmission Defect, yet failed and refused to offer an effective remedy even after receiving numerous consumer complaints. Plaintiff asserts that this constitutes a breach of the implied warranty of merchantability and caused economic damage to Plaintiff and the Class, including "loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their Transmissions." [7] at 25, ¶ 99.

Plaintiff's third claim is for violation of the Magnuson-Moss Warranty Act, a federal statute "designed to protect consumers against deceptive warranty practices." *Reid v. Unilever U.S., Inc*., 964 F. Supp. 2d 893, 919 (N.D. Ill. 2013). Plaintiff alleges that Defendant breached its three-year/36,000 mile New Vehicle Limited Warranty and five-year/60,000 mile Powertrain Warranty by selling Vehicles with defective Transmissions and refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, any defective component parts.

In his fourth claim, for violation of the ICFA, Plaintiff alleges that Defendant engaged in deceptive trade practices by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective Transmissions installed in them, depriving Class members of the benefit of their bargains with Defendant. Specifically, Plaintiff claims that Defendant's deceptive business practices include: (i) representing that its vehicles and transmissions had characteristics, uses, or benefits which they do not have; (ii) advertising its goods with intent not to sell them as advertised; (iii) representing that its vehicles and transmissions are of a particular standard, quality, or grade when they are not; (iv) representing that a transaction conferred or involved rights, remedies, or obligations which they do not; and (v) representing that its goods have been supplied in accordance with a previous representation when they have not. Plaintiff alleges that Defendant knew of the Transmission Defect since at least March 2018, when it issued the first TSB regarding the Defect. Yet, Defendant concealed the Defect, made incomplete representations about the safety of the Vehicles, and continued to allow unsuspecting new and used car purchasers to buy, lease, and drive the Class Vehicles.

Plaintiff's fifth claim is for common law negligence. Plaintiff alleges that Defendant had a duty to design and manufacture a product that would be safe for its intended and foreseeable uses and users, including the use to which its products were put by Plaintiff and the Class Members, which it breached through its negligence in the design, development, manufacture, and testing of the Transmissions installed in the Class Vehicles. Defendant allegedly knew, or in the exercise of reasonable care should have known, that the Vehicles pose an unreasonable risk of serious bodily injury to Plaintiff, Class Members, and others because they are susceptible to shifting harshly and erratically, causing the Vehicles to jerk, lunge, and hesitate between gears, which can, among other things, distract drivers and cause them to lose control over their Vehicles. Plaintiff further

contends that Defendant owed duties to the Class to ensure that an appropriate repair procedure was developed and made available to consumers, as well as a duty not to engage in fraudulent or deceptive conduct, including the knowing concealment of material information such as the Transmission's shifting problems. Plaintiff further alleges that under the TREAD Act, Defendant owed an independent duty to send notice to Plaintiff and Class Vehicle owners, purchasers, and dealers whenever it learns the vehicle or equipment contains a defect and decides in good faith that the Defect is related to motor vehicle safety. Despite Defendant's awareness of the Transmission Defect, it allegedly failed to timely notify owners, purchasers, and dealers.

Finally, Plaintiff asserts a claim for unjust enrichment. Plaintiff alleges that, as a result of its fraudulent acts and omissions related to the defective Transmissions, Defendant obtained monies which rightfully belong to Plaintiff and the Class Members to the detriment of Plaintiff and the proposed Class Members. In particular, Defendant's actions allegedly caused the Class members to pay "a higher price for their vehicles which actually had lower values." [7] at 32, ¶ 146. Defendant also allegedly "received monies for vehicles and transmissions that Plaintiff and the proposed Class Members would not have otherwise purchased or leased." *Id.*

## II.    Legal Standard

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez*, 877 F.3d at 275 (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th

7

Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## III.    Analysis

### A.    Breach of Express and Implied Warranties and Violation of the Magnuson-Moss Warranty Act

The Court considers Plaintiff's first three claims together. His first claim is for breach of express warranty. Pursuant to Illinois statute, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS § 5/2-313(1)(a). "To state a claim for breach of express warranty in Illinois, plaintiffs must allege that the seller: (1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *Aquino v. C.R. Bard, Inc.*, 413 F. Supp. 3d 770, 787 (N.D. Ill. 2019).

Plaintiff's second claim is for breach of implied warranty. In Illinois, "[i]mplied warranties arise as a matter of law." *S.A.M. Electronics, Inc. v. Osaraprasop*, 39 F. Supp. 2d 1074, 1088 (N.D. Ill. 1999) (citing *Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1341 (Ill. App. 1989)). Pursuant to statute, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314. "Goods to be merchantable must be at least such as … are fit for the ordinary purposes for which such goods are used." *Id*. § 5/2-314(2)(c).

Plaintiff's third claim is for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. ("MMWA"). "The MMWA distinguishes between two kinds of written warranties: full warranties and limited warranties," which "must be 'clearly and conspicuously' designated as

one or the other." *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 780 (7th Cir. 2011). "Sections 2303(a) and 2304(a) of the MMWA impose minimum federal standards for 'full' warranties and provide remedies for their breach"—either a full refund or replacement of the product if the defect cannot be remedied after a reasonable number of attempts. *Id*. (citing 15 U.S.C. §§ 2303(a), 2304(a)). "'Limited' warranties and 'implied' warranties are not subject to the same standards as 'full' warranties." *Id*. at 781. Instead, the MMWA "allows consumers to enforce [limited] written and implied warranties in federal court, [as provided in section 2310(d)(1),] borrowing state law causes of action." *Id*. (quoting *Schimmer v. Jaguar Cars, Inc*., 384 F.3d 402, 405 (7th Cir. 2004)) (internal quotation marks omitted). "As this discussion suggests, for all practical purposes, the MMWA operates as a gloss on [a plaintiff's] state law breach of warranty claims." *Id.*

Defendant moves to dismiss both of the state law warranty claims because, among other things, Plaintiff fails to allege that he provided Defendant with pre-suit notice of any alleged breach of warranty. The Court agrees, and therefore will dismiss the first and second counts of Plaintiff's amended complaint.

This action involves the sale of goods in Illinois and therefore is governed by Illinois' Uniform Commercial Code ("UCC"). The UCC provides in relevant part that where a tender of goods has been accepted, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 ILCS 5/2-607(3)(a). In construing this provision of state law, the Court is "bound by the decisions of the state's highest court"—here, the Illinois Supreme Court. *In re Emerald Casino, Inc*., 867 F.3d 743, 765 (7th Cir. 2017) (citing *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236–37 (1940)). According to the Illinois Supreme Court, section 2-607(a)(3) requires a plaintiff to "directly notify

the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 589 (Ill. Sup. 1996). The intent of this requirement is "to encourage pre-suit settlement negotiations." *In re McDonald's French Fries Litigation*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007). It "applies to all the various beneficiaries of an implied or express warranty in addition to the purchaser of the goods." *Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021, 1025 (Ill. App. 1998).

In this case, Plaintiff does not allege in the governing complaint—nor does he assert in response to Defendant's motion to dismiss—that he ever provided notice to Defendant of any problems with his Transmission prior to filing this lawsuit. Instead, he argues that he is entitled to take advantage of the "actual knowledge" exception to the pre-suit notice requirement. "Under Illinois warranty law, 'direct notice is not required when ... the seller has actual knowledge of the defect of the particular product.'" *In re 100% Grated Parmesan Cheese Marketing & Sales Practices Litigation*, 393 F. Supp. 3d 745, 759 (N.D. Ill. 2019) (quoting *Connick*, 675 N.E.2d at 589). Plaintiff contends that the exception applies here because, by the time he leased his Vehicle from an authorized Ford dealer, many other consumers had complained about the Transmissions and Defendant had already issued two TSBs acknowledging complaints about the Transmission.

Plaintiff's contention fails because the Illinois Supreme Court has expressly rejected this theory of notice, and this Court is bound by its decision. See *Emerald Casinos*, 867 F.3d at 765. In *Connick*, a class of plaintiffs who had purchased Samurai vehicles brough a breach of warranty claim against the manufacturer, Suzuki, based on allegations that the Samurai was unsafe due to its excessive roll-over risk. 675 N.E.2d at 587. The plaintiffs contended that "they were excused from giving direct notice of the breach of warranty because Suzuki had actual knowledge of the Samurai's alleged safety risks." *Id.* at 589. While recognizing that it was "uncontroverted that

10

Suzuki was aware of the safety concerns regarding the Samurai," the court nonetheless held that "Suzuki's generalized knowledge about the safety concerns of third parties is insufficient to fulfill plaintiffs' UCC notice requirement." *Id*. at 590. The court explained that although "it is unnecessary to list specific claims of breach of warranty in giving notice under section 2–607, it is essential that the seller be notified that *this particular transaction* is troublesome and must be watched." *Id*. (emphasis in original; internal citation omitted).

Quoting an opinion from Judge Learned Hand interpreting the predecessor to section 2-607, the Illinois Supreme Court elaborated that "[t]he notice 'of the breach' required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of *buyer's claim* that they constitute a breach." *Connick*, 675 N.E.2d at 590 (emphasis in *Connick*) (quoting *American Mfg. Co. v. U.S. Shipping Board Emergency Fleet Corp*., 7 F.2d 565, 566 (2d Cir. 1925)). That is because "[t]he purpose of the notice is to advise the seller that he must meet a claim for damages, as to which, rightly or wrongly, the law requires that he shall have early warning." *American Mfg.*, 7 F.2d at 566. Thus, the court concluded, "even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2–607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." *Connick*, 675 N.E.2d at 590 (collecting Illinois Appellate Court cases); see also *Anthony v. Country Life Manufacturing, LLC*., 70 Fed. Appx. 379, 383–84, 2003 WL 21540975, at *4–5 (7th Cir. 2003) (not selected for publication) (nutrition bar manufacturer did not have actual notice of plaintiff's claim that its bars contained substances not approved by the FDA, even though manufacturer was aware of ingredients in bars, because plaintiff failed to notify defendant of the claimed breach of implied warranty of mechantability prior to filing suit (citing *Connick*, 675 N.E.2d at 590)); *100% Grated Parmesan Cheese*, 393 F.

11

Supp. 3d at 759 (dismissing Illinois breach of warranty claims alleging that defendant used cellulose filler in cheese while advertising product as 100% cheese, where "[a]t best, Plaintiffs allege that [defendant] was aware of 'problems with [its] particular product line,'" which "falls far short of an allegation that [defendant] was on notice that the 'particular transactions[]' in which the 'particular product[s]' at issue were 'purchased by [the] particular buyers' now bringing suit were 'troublesome and must be watched'" (quoting *Connick*, 675 N.E.2d at 590)); *DeBernardis v. NBTY, Inc*., 2018 WL 461228, at *3 (N.D. Ill. Jan. 18, 2018) (dismissing breach of express warranty claim, which alleged that defendants falsely and knowingly advertised a "miracle supplement" to plaintiff and a proposed class, where plaintiff failed to provide notice to defendant Family Dollar prior to filing suit); *Darne v. Ford Motor Company*, 2017 WL 3836586, at *9 (N.D. Ill. Sept. 1, 2017) (applying *Connick* and dismissing plaintiffs' breach of express warranty claim against Ford on the basis that "[a]ny generalized allegation that [one of the plaintiffs] complained to Ford's Customer Relationship Center, without any allegation identifying which vehicle and which alleged breach it identified in a particular complaint to Ford," is insufficient to satisfy actual knowledge exception).

In his response to the motion to dismiss, Plaintiff never comes to terms with *Connick*. Instead, Plaintiff cursorily states that "Courts reviewing similar allegations routinely apply the actual knowledge exception to the direct notice requirement," and provides a string cite to a handful of federal district court cases that allegedly support his argument that notice is not required when the manufacturer had learned from some source other than the plaintiff of its product's alleged defect. [38] at 14-15. Like Chief Judge Pallmeyer in *Muir v. NBTY, Inc*., 2016 WL 5234596 (N.D. Ill. Sept. 22, 2016), this Court respectfully "notes language from the Illinois Supreme Court holding that this kind of generalized knowledge is not sufficient to excuse the pre-

suit notice requirement." *Muir v. NBTY, Inc.*, 2016 WL 5234596, at *9 (N.D. Ill. Sept. 22, 2016) (applying *Connick* to dismiss breach of warranty claim involving allegedly defective St. John's Wort supplement, where "[n]o allegations at all suggest any Defendant had knowledge of any specific problem with the bottle Plaintiff himself purchased"). The Court is bound to follow *Connick*. See *Emerald Casino*, 867 F.3d at 765.

Plaintiff also asserts that "the issue of notice is usually a question of fact for the jury rather than an issue decided on a motion to dismiss." [38] at 15. However, "the sufficiency of notice is not an issue if plaintiffs do not allege notice in the first place." *Porter v. NBTY, Inc.*, 2016 WL 6948379, at *7 (N.D. Ill. Nov. 28, 2016) (rejecting argument that sufficiency of notice was question of fact inappropriate for motion to dismiss, when plaintiffs did "not allege that they provided defendants with pre-suit notice" but rather alleged that "someone else did" and "gave no information on where that person bought the product or his relationship to plaintiffs"). Here, Plaintiff does not allege in the complaint or assert in response to the motion to dismiss that he ever contacted Defendant about his vehicle in any manner before filing suit. Thus, Plaintiff has not identified any questions of fact that need to be decided before concluding that he failed to comply with section 2-607's pre-suit notice requirement. "It is now impossible, of course, for [Plaintiff] to provide pre-suit notice of the alleged breach of warranty to Ford"; he filed suit in 2019, "and cannot now unring that bell." *Darne*, 2017 WL 3836586, at *9 (citing *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 761 (N.D. Ill. 2015) (dismissing express breach of warranty claim due to plaintiff's failure to provide pre-suit notice and explaining that "[a]t this point, it would be impossible for [plaintiff] to provide pre-litigation notice of the breach of warranty)).

Plaintiff's MMWA claim also must be dismissed because it is contingent on Plaintiff having a viable state law warranty claim. Plaintiff contends that even if his state law warranty

13

claims are deficient, his MMWA claim survives because the complaint alleges that "Ford breached its express warranties by 'refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, any defective component parts,' a claim that is premised on § 2304(a)(1) of the MMWA." [38] at 19-20. But section 2304(a) applies only to *full* written warranties. See *Anderson*, 662 F.3d at 780; *Schimmer*, 384 F.3d at 405 (written warranty on a Jaguar XK8 vehicle was "a 'limited' one not subject to § 2304 and thus not subject to the Act's substantive remedies"). Plaintiff's MMWA claim is based on the 36,000 mile "New Vehicle Limited Warranty," [7] at 6, ¶ 26, and the 5 year/60,000 mile extended warranty coverage for Powertrain components, *id*. ¶ 27, both of which are *limited* warranties. See [24-2] at 14. Limited warranties are enforced as provided in section 2310(d)(1), which "borrow[s] state law causes of action." *Anderson*, 662 F.3d at 780; see also *Schimmer*, 384 F.3d at 405. Because Plaintiff's state law warranty claims fail, he also cannot make out a claim under the MMWA. See *Schiesser v. Ford Motor Company*, 2017 WL 1283499, at *4 (N.D. Ill. Apr. 6, 2017).

### B. Illinois Consumer Fraud Act

The ICFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…in the conduct of trade or commerce…whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2. The elements of a claim for violation of the ICFA are "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *Skyrise Construction Group, LLC v. Annex*

*Construction, LLC*, 956 F.3d 950, 960 (7th Cir. 2020) (quoting *De Bouse v. Bayer*, 922 N.E.2d 309, 313 (2009)) (internal quotation marks omitted). Where an ICFA claim rests on allegations of deceptive conduct, Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud. See *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) (citing Fed. R. Civ. P. 9(b)). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* "This means as a practical matter that [a party] must identify the 'who, what, when, where, and how' of the alleged fraud." *Benson v. Fannie May Confections Brands, Inc*., 944 F.3d 639, 646 (7th Cir. 2019).

Defendant moves to dismiss Plaintiff's ICFA claim on the basis that it fails to state a claim with particularity as required by Rule 9(b). The Court agrees and will dismiss the ICFA claim. Plaintiff alleges that Defendant engaged in deceptive trade practices in violation of the ICFA by "(i) representing that its vehicles and transmissions had characteristics, uses, or benefits which they do not have; (ii) advertising its goods with intent not to sell them as advertised; (iii) representing that its vehicles and transmissions are of a particular standard, quality, or grade when they are not; (iv) representing that a transaction conferred or involved rights, remedies, or obligations which they do not; and (v) representing that its goods have been supplied in accordance with a previous representation when they have not." [7] at 27, ¶ 118. These generalized allegations fail to describe with particularity the specific misrepresentations on which Plaintiff allegedly relied. Defendant does not identify "the time, place, and content of the misrepresentation," or "the method by which the misrepresentation was communicated to the plaintiff." *Camasta v. Jos. A. Bank Clothiers, Inc*., 761 F.3d 732, 737 (7th Cir. 2014); see also *Baldwin v. Star Scientific, Inc*., 78 F. Supp. 3d 724, 737 (N.D. Ill. 2015) (dismissing ICFA claim where plaintiff's complaint was

"replete with allegations recounting vague, nonspecific statements made by 'Defendants' about Anatabloc's supposed benefits" but failed to identify "a single actual misrepresentation that was communicated to Plaintiff, much less which Defendant made it").

The only Ford representations that the complaint specifically cites are three excerpts from Ford's website, which tout the F-150's "class-leading capability," "3.5L EcoBoost," and "10-speed automatic transmission." [7] at 5-6. The excerpt concerning the transmission says: "F-150 EcoBoost, V8 and diesel engines deliver their power through an advanced 10-speed automatic transmission. Compared with the 6-speed, the 10-speed delivers improved overall performance, with enhanced acceleration at the low and mid ranges of the power band. Features include optimized wide-span gear spacing coupled with drag-reduction actions plus three overdrive gears. What's more, you can choose from selectable modes: Normal, Tow-Haul, Snow-Wet, EcoSelect, and Sport." *Id.* at 6. The complaint does not identify anything in the three excerpts that is purportedly false. Nor does it allege that Plaintiff reviewed the website before leasing his Vehicle—or relied on some other deceptive or misleading statement from Defendant. See *Schiesser*, 2017 WL 1283499, at *6 (dismissing ICFA claim against Ford arising out of alleged defect that allowed harmful exhaust gas to enter vehicle where plaintiff did "not allege that he saw or heard any of the allegedly deceptive communications prior to purchasing the vehicle"). Without a plausible link tying any particular statement by Defendant to Plaintiff's purchase of the Vehicle, Plaintiff also fails to allege proximate causation, as required to state a claim for violation of the ICFA. See *id.*

Plaintiff argues that even if he has not adequately alleged an ICFA claim based on an alleged misrepresentation, his allegations concerning Defendant's material omissions are sufficient to state a claim. The complaint alleges that Defendant "has known of the defective

transmissions since at least March 2018, when it issued the first TSB regarding the Defect, thereby acknowledging numerous consumer complaints made to the NHTSA," [7] at 28, ¶ 119; that Defendant deliberately "continued to allow unsuspecting new and used car purchasers to buy or lease the Class Vehicles and allowed them to continue driving dangerous vehicles," *id.*; that had they "been aware of the defective transmissions installed in the Class Vehicles, Plaintiff and Class Members either would have paid less for their vehicles or would not have purchased or leased them at all," *id.* at 29, ¶ 122; and that as a result "they did not receive the benefit of their bargain," *id.* In *Connick*, the Illinois Supreme Court held that similar allegations were sufficient to state an ICFA claim based on omissions. 675 N.E.2d at 595 ("We find that plaintiffs adequately pled a consumer fraud violation based on a material omission by Suzuki. Plaintiffs alleged that Suzuki was aware of the Samurai's safety problems, including its tendency to roll over and its inadequate protection for passengers. Plaintiffs further alleged that Suzuki failed to disclose these defects. Finally, plaintiffs alleged that the safety problems of the Samurai were a material fact in that they would not have purchased the vehicles if Suzuki had disclosed the Samurai's safety risk. Accordingly, we affirm the appellate court insofar as it reinstated the count alleging that Suzuki committed consumer fraud by concealing material facts about the Samurai's safety risks."); see also *Muehlbauer v. General Motors Corp*., 431 F. Supp. 2d 847, 868 (N.D. Ill. 2006) (buyer of automobile with allegedly defective antilock brake systems stated ICFA claim where buyer alleged knowledge of defects, and deliberate nondisclosure, leading to purchase of vehicle buyer would not have acquired, had he been made aware of problem, and that he sustained damages as result of deception).

Nonetheless, there is a key difference between this case and *Connick*, which requires dismissal of Plaintiff's ICFA claim for failure to state a claim. "[I]n *Connick*, the plaintiffs

received communications from Suzuki, through a car review piece within 'Car & Driver' magazine for which Suzuki provided misleading information." *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009). "Viewed in this context," the Illinois Supreme Court has more recently explained, "it is clear that the plaintiffs in *Connick* relied not on a 'market theory' of causation, but on direct statements from Suzuki that contained both misleading statements and material omissions." *Id*. Further, the court explained, "[w]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission." *De Bouse*, 922 N.E. 2d at 316. Thus, "[i]f there has been no communication with the plaintiff, there have been no statements and no omissions," and the "plaintiff cannot prove proximate cause." *Id*.; see also *Darne*, 2017 WL 3836586, at *10 ("Under the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose."). Here, Plaintiff does not identify any particular direct statements from Defendant that contain material omissions. For that reason, Plaintiff also fails to state an ICFA claim based on a "material omission" theory. See *id*. (noting that plaintiff's earlier complaint had been dismissed because plaintiff failed to state that it reviewed warranty or whether warranty's provision of free repairs to defective parts induced its purchase on vehicle containing defective engine).

Finally, Plaintiff argues that even if he fails to state a claim for deceptive practices under Rule 9(b), his ICFA claim nonetheless survives to the extent it is based on unfair conduct, which is not subject to a heightened pleading standard. According to Plaintiff, the complaint alleges that Defendant engaged in unfair conduct in violation of the ICFA "by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective transmissions installed in them." [7] at 27, ¶ 118. However, this is the same conduct that Plaintiff alleges is "deceptive" in violation of the ICFA. The addition of "unfairness" language does not change an

ICFA claim that is "entirely grounded in fraud" to an unfairness claim. *Camasta*, 761 F.3d at 737; see also *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011) (finding pleading was premised on intentional concealment and therefore appropriately interpreted as deceptive practices claim subject to Rule 9(b), not unfair practices claim subject to Rule 8); *Schiesser*, 2017 WL 1283499, at *6.

### C.    Unjust Enrichment

Defendant argues that Plaintiff's unjust enrichment claim fails because it is premised on the same conduct underlying Plaintiff's legally deficient ICFA claim and because it independently fails to satisfy Rule 9(b). The Court agrees and will dismiss the unjust enrichment claim as well.

To state a claim for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Banco Panamericano, Inc. v. City of Peoria*, 880 F.3d 329, 333 (7th Cir. 2018) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. Sup. 1989)). When an unjust enrichment claim "sounds in fraud," Rule 9(b)'s particularity requirement applies. *Nieto v. Perdue Farms, Inc.*, 2010 WL 1031691, at *5 (N.D. Ill. Mar. 17, 2010); see also *Pirelli*, 631 F.3d at 447. "While an unjust enrichment claim may be pursued as an independent cause of action, where the claim rests on the same improper conduct alleged in another claim it will stand or fall with the related claim." *Krug v. Am. Family Mut. Ins. Co.*, 227 F. Supp. 3d 942, 946 (N.D. Ill. 2016).

Here, Plaintiff's unjust enrichment claim is premised on the same factual allegations as his underlying ICFA claim, which fails to comply with Rule 9(b) for the reasons explained above. Specifically, Plaintiff's unjust enrichment count incorporates the factual allegations of the preceding paragraphs and asserts that "Ford has long known that its 10R80, 10-speed automatic

transmissions have a propensity to shift harshly and erratically, causing the vehicle to jerk, lunge, and hesitate between gears, posing a serious safety risk, which it concealed and failed to disclose to Plaintiff and the proposed Class Members." [7] at 32, ¶¶ 142, 144. Further, Plaintiff identifies the same "who," "what," "when," "where," and "how" in arguing why the unjust enrichment and ICFA claims are sufficient under Rule 9(b). See [38] at 29, 36. Therefore, Plaintiff's unjust enrichment claim will be dismissed along with the ICFA claim.

### D.      Negligence

Finally, the Court considers Plaintiff's negligence claim. "In Illinois, the elements of a negligence claim are 'the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach.'" *Totty v. Anderson Funeral Home, Ltd.*, -- F. Supp. 3d --, 2020 WL 1330369, at *4 (N.D. Ill. Mar. 23, 2020). Defendant argues that Plaintiff's negligence claim is barred by the economic loss doctrine, which is also known as the *Moorman* doctrine in Illinois. The Court agrees.

In *Moorman Manufacturing Co. v. National Tank Co.*, the Illinois Supreme Court held that "[t]ort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence," while the "remedy for economic loss ... lies in contract." 435 N.E.2d 443, 450 (1982). "Economic loss" includes "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property," as well as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Id.* at 449 (internal quotation marks and citation omitted). "Simply put, a product that damages only itself cannot be the subject of a suit for damages." *Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 763 N.E.2d 428, 436 (Ill. App. 2002). Further, "[e]ven

named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *T.S. v. Twentieth Century Fox Television*, -- F.R.D. --, 2020 WL 247463, at *9 (N.D. Ill. Jan. 16, 2020).

The complaint does not allege that Plaintiff has suffered any non-economic damage. He does not claim to have suffered any physical injuries as a result of driving his Vehicle with an allegedly defective Transmission. Nor does Plaintiff allege that the sudden or dangerous malfunctioning of the Transmission resulted in damage to any property (other than, perhaps, the Vehicle itself, although he does not make that clear).

Plaintiff argues that he is nonetheless entitled to pursue a negligence claim under two exceptions to the *Moorman* doctrine, which apply "where the plaintiff's damages are proximately caused by either (1) a defendant's intentional false representation (i.e., fraud), or (2) a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *Swervo Entertainment Group, LLC v. Mensch*, 2017 WL 1355880, at *8 (N.D. Ill. Apr. 13, 2017). Plaintiff maintains that the first exception applies because the damages alleged in the complaint "arise out of intentional false representations made by Ford." [38] at 33. He then concludes that "[b]ecause Plaintiff pleaded a cause of action for negligent misrepresentations, his claim falls under the exception expressly recognized in *Moorman* in which tort recovery may be allowed for damages caused by fraud." *Id*. However, this argument "appears to confuse basic tenets of tort law." *Ibarolla v. Nutrex Research, Inc*., 2012 WL 5381236, at *6 (N.D. Ill. Oct. 31, 2012). *Ibarolla* is instructive. There, the plaintiff contended that "her negligence claim should survive because it is based on allegations of fraudulent conduct." *Id*. The court explained that "[t]hat, of course, is impossible, because by definition fraud is intentional and

negligence is not." *Id*. Therefore, the intentional false representation "cannot apply to a negligence claim." *Id*.; see also *Moorman*, 435 N.E.2d at 452 ("[T]he UCC provides the proper framework for a purchaser's recovery of economic losses. Allowing an aggrieved party to recover under a negligence theory for solely economic loss would constitute an unwarranted infringement upon the scheme provided by the UCC."); *Swervo*, 2017 WL 1355880, at *9 (holding that "Plaintiff is precluded as a matter of law from arguing the fraud exception" to *Moorman* doctrine because "[a]lthough this exception may permit recovery for economic loss under a theory of intentional tort, it does not permit recovery for economic loss under a negligence theory"); *Prescott v. Argen Corp.*, 2014 WL 4638607, at *8 (N.D. Ill. Sept. 17, 2014) (fraud exception to *Moorman* doctrine did not apply to negligence claim because "[n]egligence is by definition unintentional [and] therefore cannot constitute fraud, which is by definition intentional").

Plaintiff also asserts that the "information provider" exception applies to his negligence claim. This exception, which is to be narrowly construed "lest the exception swallow the rule," "allows recovery of economic losses under a negligent misrepresentation theory when two elements are present: First, the defendant must be in the business of supplying information, and second, the defendant must provide this information for the guidance of others in their business relations with third parties." *Gerdes v. John Hancock Mut. Life Ins. Co*., 712 F. Supp. 692, 696, 699 (N.D. Ill. 1989). The Illinois Supreme Court has explained that in determining whether the exception applies, "the focus must be on whether the defendant is in the business of supplying *information* as opposed to providing something tangible." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334 (Ill. 2006) (emphasis in original). "In short, the negligent misrepresentation exception to the *Moorman* doctrine is not applicable if the information supplied is merely ancillary to the sale of a product." *Id*. (citing *Fireman's Fund Insurance Co. v. SEC*

22

*Donohue, Inc.*, 679 N.E.2d 1197 (Ill. 1997)); see also *Haimberg v. R & M Aviation, Inc.*, 5 Fed. App'x 543, 547 (7th Cir. 2001); *F.D.I.C. v. Masarsky*, 968 F. Supp. 2d 915, 924–25 (N.D. Ill. 2013). "[A]t one end of the continuum are those businesses that provide a noninformational product or service—usually tangible goods; in this situation, any representation made by the defendant with respect to, for example, operating instructions and warranty information is merely incidental to the sale of the product." *Gerdes*, 712 F. Supp. at 696. "[A]t the opposite end of the continuum are businesses that provide a product consisting solely of information." *Id.* at 698.

Defendant manufactures and sells automobiles, a tangible good, and therefore falls at the end of the spectrum of businesses that are not in the business of supplying information. See *Hartford Fire Ins. Co. v. Henry Bros. Const. Mgmt. Servs., LLC*, 877 F. Supp. 2d 614, 620 (N.D. Ill. 2012) ("Examples of entities at the tangible product end of the continuum include manufacturers of computers and software, among other products, and sellers of crop sprayers. With tangible product providers, while the entity may exchange information, the information relates only to the goods or services, and thus, is 'supplied incidental to the sale of the product.'" (internal citation and quotation marks omitted)); *Reschke v. Pactiv, LLC*, 2014 WL 7054143, at *3 (N.D. Ill. Dec. 12, 2014) ("Unlike pure information providers, manufacturers like Defendant do not produce information themselves, and are thus not 'in the business of supplying information.").

Plaintiff acknowledges that Defendant's primary business is manufacturing and selling automobiles, but argues that the information provider exception nonetheless applies because "under the TREAD Act Ford owed an independent duty to send notice to Plaintiff and Class Vehicle owners, purchasers, lessees and dealers whenever it learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety." [38] at 34 (citing 49 U.S.C. § 30118(c)). "As such," Plaintiff maintains, "an independent duty to

23

become an 'information provider' arose at the time Ford discovered the Transmission Defect." *Id*.

However, Plaintiff offers no legal support for his position that having a legal duty to provide certain

information somehow transforms a company that sells goods into a company that is "in the

business of supplying information." *Gerdes*, 712 F. Supp. at 696. Further, Plaintiff alleges no

facts suggesting that any of the information that Defendant allegedly supplied or failed to supply

was used by Plaintiff in his "business relations with third parties." *Gerdes*, 712 F. Supp. at 696;

see also *Nepomonceno v. Knights of Columbus*, 1999 WL 66570, at *12 (N.D. Ill. Feb. 8, 1999);

*Reschke*, 2014 WL 7054143, at *3. For these reasons, the Court concludes that the economic loss

rule bars Plaintiff's negligence claim.

## IV.    Conclusion

For these reasons, Defendant's motion to dismiss Plaintiff's amended complaint [23] is

granted. As noted at the outset, out of an abundance of caution, the dismissal is without prejudice

to filing a second amended complaint by September 8, 2020. If Plaintiff files a second amended

complaint, Defendant will be given until October 6, 2020 to file a responsive pleading. If Plaintiff

does not intend to file a second amended complaint, he should file a statement to that effect and

the Court will set the matter for a telephonic status hearing.


Dated: August 7, 2020

_____

Robert M. Dow, Jr.
United States District Judge