UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUSTIN O'CONNOR, STANISLAW ZIELINSKI, DANIEL FAIR, BRYAN SMITH, JASON STEEN, WILLIAM FIEDLER, MICHAEL BARCELONA, ROBERT MARINO, BRIAN DOUGHERTY, SUSAN HELLER, VICTOR ORNDORFF, and MICHAEL MCDONALD on behalf of themselves and all others similarly situated, <br><br>     Plaintiff, <br> v. <br><br> FORD MOTOR COMPANY, <br><br>     Defendant. | Case No. 1:19-cv-05045 <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY** <br><br> **Consolidated with Case Nos. 20-cv-1981, 20-cv-2095, 20-cv-2612, and 21-cv-6540** <br><br> **Judge Robert M. Dow, Jr.** <br> **Magistrate Judge Maria Valdez** |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVRY**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

    I.   Interrogatory No. 1 Seeks Basic Information Concerning the Identity of Potential Witnesses That is Neither Privileged Nor Improper Discovery on Discovery.    1

    II.   Interrogatory Nos. 2 & 8 Seek Basic Information Regarding the 10R80 Transmission: Individuals Involved in Its Production, and Its Component Parts.    4

    III.  Plaintiffs' Request for Failure or Replacement Rate Analyses in Request No. 22 is Limited to the 10R80 Transmission.    7

    IV.  Requests for Production 13, 49, & 50 Seek Relevant Information Regarding Manufacturing and Production Costs for the 10R80 Transmission.    8

    V.   Request For Production No. 48 Seeks Relevant Price Setting Information.    9

    VI.  Ford Refuses to Use Search Terms, Even Where Appropriate.    10

    VII. Ford Has Not Produced Conjoint Analyses Nor Confirmed That They Will Ever Be Produced.    11

CONCLUSION .................................................................................................................... 11

CERTIFICATE OF SERVICE ............................................................................................. 13

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                                                      **Page(s)**

*Am. Floral Servs. Inc. v. Florists Transworld Delivery Assoc.*, 107 F.R.D. 258 (N.D. Ill. 1985) ... 3

*Asher v. Baxter Int'l, Inc.*, 2005 WL 8180774 (N.D. Ill. Sept. 9, 2005) ........................................ 3

*Burd v. Ford Motor Co.*, No. 3:13-CV-20976, 2015 WL 4137915 (S.D.W.Va. Jul. 8, 2015) ... 10-11

*Computer Assocs. Int'l, Inc. v. Quest Software, Inc.*, No. 02 C 4721, 2003 WL 22159022 (N.D. Ill. Sept. 17, 2003) ................................................................................................................ 2-3

*Doe v. Loyola Univ. Chicago*, No. 18 CV 7335, 2020 WL 406771 (N.D. Ill. Jan. 24, 2020) ....... 1

*Equal Emp. Opportunity Comm'n v. Sterling Jewelers Inc.*, No. 08-CV-00706(A)(M), 2010 WL 2803017 (W.D.N.Y. July 15, 2010) ................................................................................... 3

*Green v. Toyota Motor Corp.*, No. 3:11-CV-0207-N, 2012 WL 13065682 (N.D. Tex. July 18, 2012) ............................................................................................................................... 6

*Gross v. Chapman*, 2020 WL 4336062 (N.D. Ill. July 28, 2020) ................................................. 3

*Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447 (N.D. Ill. 2006) .......................... 1

*LKQ Corp. v. Gen. Motors Co.*, No. 20 C 2753, 2021 WL 4127326 (N.D. Ill. Sept. 9, 2021) ..... 5

*Omega Engineering, Inc. v. Omega, S.A.,* 2001 WL 173765 (D.Conn. 2001) .............................. 3

*Osada v. Experian Info. Solutions, Inc.*, 290 F.R.D. 485 (N.D. Ill. 2012) ................................ 1, 2

*State Farm Fire & Cas. Co. v. Black & Decker, Inc.*, No. CIV.A. 02-1154, 2003 WL 103016 (E.D. La. Jan. 9, 2003) .................................................................................................. 3, 6, 7

*Tice v. American Airlines, Inc.,* 192 F.R.D. 270 (N.D. Ill, 2000) ................................................. 1

*Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 62 (E.D.N.Y. 2007) ................................ 2

*Wiginlon v. CB Richard Ellis, Inc.,* 229 F.R.D. 568 (N.D. Ill. 2004) ........................................... 1

## INTRODUCTION

In its Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Discovery, ECF Dkt. No. 154 ("Opposition" or "Opp."), Defendant Ford Motor Company ("Ford") attempts to portray all discovery as "a monster on the loose," that must "be throttled." Opp., p. 3. But, in fact, discovery—especially discovery focused on basic facts and core concepts in the case, such as that described in Plaintiffs' Motion to Compel Discovery, ECF Dkt. No. 152 ("Motion")—is essential "in order to aid in the search of truth." *Tice v. American Airlines, Inc.,* 192 F.R.D. 270, 272 (N.D. Ill, 2000). Because the purpose of discovery is to help "define and clarify the issues," relevance is to be construed broadly. *Doe v. Loyola Univ. Chicago,* No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). And "[i]f relevance is in doubt, courts should err on the side of permissive discovery." *Wiginlon v. CB Richard Ellis, Inc.,* 229 F.R.D. 568. 577 (N.D. 111. 2004).

Further, "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist*., 235 F.R.D. 447, 450 (N.D. Ill. 2006). This burden "is not satisfied by a 'reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome, or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Osada v. Experian Info. Solutions, Inc*., 290 F.R.D. 485, 494 (N.D. Ill. 2012).

## ARGUMENT

**I. INTERROGATORY NO. 1 SEEKS BASIC INFORMATION CONCERNING THE IDENTITY OF POTENTIAL WITNESSES THAT IS NEITHER PRIVILEGED NOR IMPROPER DISCOVERY ON DISCOVERY.**

Ford claims that any response to Plaintiffs' Interrogatory no. 1 is privileged work product because it would "reveal the mental impressions and conclusions of Ford's counsel." *See* Opp., p. 4. However, Plaintiffs are not requesting that Ford "comb through attorney notes," but rather

just to identify which individuals were involved in providing the facts disclosed in response to Plaintiffs' interrogatories, and identifying the location of relevant documents. Thus, Ford's sole cited case on this question, does not control here (in addition to being non-binding). *Id.* (citing *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 62 (E.D.N.Y. 2007)). Specifically—and despite Ford's claim that it was "nearly identical"—the interrogatory at issue in *Weiss* sought the identity of "all persons who ***assisted*** in preparing responses to these Interrogatories and all documents considered...."; the court interpreted this to encompass "'every person whom Plaintiff[s or their] agents have contacted, interviewed or communicated with concerning Plaintiff[s'] allegations in this case,' or even which persons plaintiffs believe to have the most relevant information." 242 F.R.D. at 62 (*quoting Morgan v. City of New York*, No. 00 CIV. 9172(LMM)(DF, 2002 WL 1808233 at *3 (S.D.N.Y. Aug. 6, 2002)) (emphasis supplied).

In contrast, here, Plaintiffs are only seeking the identity of those who provided *facts* which ultimately appeared in the interrogatory responses, or who provided documents, or identified the location of documents, which were produced in response to Plaintiffs' requests. Plaintiffs' do not seek any mental impressions of Ford's attorneys, but only the identity of percipient witnesses with responsive and relevant *factual* information. Ford cannot obscure such facts, or the individuals that know them, by filtering them through its attorneys. Indeed, *Weiss* recognized this distinction, *granting* the motion to compel with respect to an interrogatory seeking the "identi[ty of] persons or entities that supplied ... or otherwise participated ... in obtaining on behalf of Plaintiffs the documents called for" in the party's response to requests for production." *Id.* ("[disclosure of] the sources of documents that [a party] may use to support their claims, does not seek thought processes, opinions or mental processes of plaintiffs' counsel….").

Ultimately, the vast weight of authority supports Plaintiffs' entitlement to the information sought by their Interrogatory number 1. *See, e.g., Computer Assocs. Int'l, Inc. v. Quest Software,*

*Inc.*, No. 02 C 4721, 2003 WL 22159022, at *1 (N.D. Ill. Sept. 17, 2003) ("CA must turn over the names of the current and former Quest employees it has interviewed in connection with this litigation."); *Asher v. Baxter Int'l, Inc.*, 2005 WL 8180774, at *5 (N.D. Ill. Sept. 9, 2005) (requiring response to "Interrogatory [seeking] identi[ty of] 24 witnesses who may have knowledge of discoverable facts");[1] *Am. Floral Servs. Inc. v. Florists Transworld Delivery Assoc.*, 107 F.R.D. 258, 261 (N.D. Ill. 1985) (holding identity of interviewed witnesses discoverable because "the mere identification of persons who know facts bearing on that claim tells [the opposing party] nothing new about the mental processes of [its] lawyers");[2] *Equal Emp. Opportunity Comm'n v. Sterling Jewelers Inc.*, No. 08-CV-00706(A)(M), 2010 WL 2803017, at *4 (W.D.N.Y. July 15, 2010) ("Sterling is entitled to the identity of the individuals that assisted in preparation of the interrogatory responses"); *Omega Engineering, Inc. v. Omega, S.A.*, 2001 WL 173765, *3 (D.Conn. 2001) (finding interrogatory requesting "identi[ty of] each person who participated in the preparation of the answers to any interrogatory" proper); *State Farm Fire & Cas. Co. v. Black & Decker, Inc.*, No. CIV.A. 02-1154, 2003 WL 103016, at *2 (E.D. La. Jan. 9, 2003) (granting motion to compel interrogatory requesting "identity of all persons participating in formulating responses to State Farm's Interrogatories").

Nor does this interrogatory represent the kind of excessive "discovery on discovery" at issue in *Gross v. Chapman*, 2020 WL 4336062, at *4 (N.D. Ill. July 28, 2020) (*see* Opp., p. 5) but rather seeks to identify those individuals who possess information most relevant to Plaintiffs' claims. Ford's continued failure to supply this information improperly hinders Plaintiffs' ability to

---

[1] Ford incorrectly states the holding of *Asher*. *See* Opp., p. 5. In fact, the court in *Asher granted* a motion to compel interrogatories identifying confidential witnesses. 2005 WL 8180774, at *5.

[2] Contrary to Ford's assertion (*see* Opp., p. 5), the court in *American Floral Services allowed* discovery of the names of individuals with relevant information. 107 F.R.D. at 261.

3

determine (a) which Ford employees are most appropriate for deposition, and (b) whether there are additional Ford employees who should be document custodians.

**II.  INTERROGATORY NOS. 2 & 8 SEEK BASIC INFORMATION REGARDING THE 10R80 TRANSMISSION: INDIVIDUALS INVOLVED IN ITS PRODUCTION, AND ITS COMPONENT PARTS.**

Ford claims that responding to Plaintiffs' Interrogatories 2 and 8 would take Ford "hundreds of hours." Opp., p. 6. Not only is this the *first* and *only* "substantiation" of Ford's claim that it would be unduly burdensome to respond,[3] but it also rings hollow.

Foremost, Ford is in the business of producing the 10R80 transmissions at issue in this case ("Transmissions"), for profit—indeed, as a single part of a much more complex machine (i.e., the vehicles in which the 10R80 Transmissions are installed)—so it is inconceivable that Ford is unable to readily compile a list of the components which are installed therein. In fact, it is critical to Ford's profitability, and ongoing viability, to be able to not only compile such information, but also use it in much more complex ways (e.g., comparing historical data to current data for specific components, considering alternative suppliers for subparts, etc.).  Likewise, a fundamental aspect of Ford's business is employing and managing the individuals involved in every aspect of designing, testing, manufacturing, marketing, and selling its vehicles (including the vehicles' parts,

---

[3] *See* Exhibit A, Belew letter dated July 15, 2022 ("Without any attempt by Ford to explain, justify, or substantiate its [unduly burdensome] objections, Plaintiffs are unable to address, or even discuss, Ford's concerns. To the extent Ford contends that it is, in fact, impossible or unduly burdensome to respond to any of Plaintiffs' requests, please immediately identify which specific Requests suffer from this problem, describe the burden associated with providing a full response, and explain why Ford believes this burden is not proportionate to the needs of this case."); *see also* Exhibit D, Belew letter dated Sept. 9, 2022 ("Ford's continued refusal to provide even this most basic information—particularly without even attempting to articulate an actual burden which would result from providing a response—is both surprising and contrary to a good faith discovery process.").

4

such as transmissions). It is therefore untenable for Ford to claim that it is difficult to identify those individuals.

Second, an undue burden argument is not properly asserted as a *complete barrier* to the information sought—particularly where such information is at the core of a parties' business model, as here. If Ford had provided a list of individuals responsive to Plaintiffs' Interrogatory no. 2 (perhaps just hundreds, or even dozens, of those "thousands" of individuals Ford claims would be responsive), while also objecting that identifying every single individual who *might be* included would present too large a burden, it is unlikely that this issue would be before the Court. Likewise, if Ford had simply provided a list of the primary components and subparts within the Transmission, while objecting that it would be unduly burdensome to identify every "nut, bolt, and wire," its discovery obligations would likely have been met. As it stands, however, Ford attempts to claim that it cannot even *begin* to respond to questions that ask for very basic, and readily available, information.

Nor do Ford's cited authorities establish otherwise. First, relying on a distinguishable and nonbinding decision, Ford insists that Plaintiffs must identify a specific part, component, or system within the 10R80 transmission. Opp., p. 6 (citing *LKQ Corp. v. Gen. Motors Co.,* No. 20 C 2753, 2021 WL 4127326 (N.D. Ill. Sept. 9, 2021)). But *LKQ* was a patent infringement case where the defendants sought a list of all parts sold by plaintiffs, regardless of whether the parts were at all related to the patent at issue, or if they were even licensed at all. *LKQ Corp.*, 2021 WL 4127326, at *1. Because the subject interrogatory requested information that had nothing to do with the issues in the case, the court denied the defendant's motion to compel. *Id.* Here, Plaintiffs do not ask for irrelevant information, but rather have explicitly, and repeatedly limited their request to the 10R80 Transmission which is the focus of this lawsuit. *See* ECF Dkt. No. 152-1, pp. 6-7.

Moreover, Ford's continued insistence that Plaintiffs must further specify an individual part of the 10R80 Transmission is unfounded. *See* Motion, pp. 4-5 (citing *inter alia Green v. Toyota Motor Corp.*, No. 3:11-CV-0207-N, 2012 WL 13065682, at *3 (N.D. Tex. July 18, 2012)). Ford tries to distinguish *Green* (Opp., p. 7), but makes no effort to explain why the discovery asked for in *Green* is less burdensome than the present case, and further provides no authority supporting its position.[4] To the contrary, the cases Ford cites simply confirm that a party is entitled to discovery of the product at issue. Opp., p. 7 (citing *Marolf v. Aya Aguirre & Aranzabal S.A.*, 2011 WL 855676 at *5 (D. Neb. 2011) (allowing discovery of the entire shotgun, not just the barrel at issue); *State Farm Fire & Cas. Co. v. Black & Decker, Inc.*, 2003 WL 103016 (E.D. La. Jan. 9, 2003) (allowing for discovery of the entire toaster)). Unlike in *Marolf* or *State Farm Fire & Cas. Co.*, Plaintiffs' Interrogatory nos. 2 and 8 do not ask for discovery of an entire product—i.e., Ford's entire F-150 trucks—but are limited to just the defective 10R80 Transmission.

Finally, Ford claims that Plaintiffs can compile information responsive to Interrogatory nos. 2 and 8 themselves, from the documents that Ford has produced. Opp., p. 8. While it is true that Plaintiffs can—and, of course, are—carefully reviewing Ford's document production, and noting the individuals and components that appear therein, even if Plaintiffs were to compile a perfect catalog of *every* person and part identified, they would have no way of knowing what proportion of relevant information they had collected, what segments or departments of information had been excluded, etc. The only way to have such clarity and understanding is if

---

[4] This is despite Plaintiffs repeatedly asking Ford to provide authority if it exists. *See* Exhibit B, email from Leland Belew dated August 2, 2022 ("[B]ecause it relates to Interrogatory no. 8, and the many other requests where Ford has insisted that Plaintiffs must specify a particular component of the transmission—see Ford's responses to Interrogatory nos. 2, 3, 5, 6, 8, and RFP nos. 4, 28—I would like to again reiterate my request for any authority which requires such a high degree of specificity in a context like ours.").

Ford provides the information, which is fundamental to its business operations and so cannot be difficult to collect.

### III. PLAINTIFFS' REQUEST FOR FAILURE OR REPLACEMENT RATE ANALYSES IN REQUEST NO. 22 IS LIMITED TO THE 10R80 TRANSMISSION.

Ford once again claims that this request is overly broad and irrelevant because it is not limited to any particular component. Opp., p. 9. Ford would have Plaintiffs limit their discovery requests to a specific clutch, planetary gear set, or solenoid within the 10R80 transmission, but Ford has failed to provide any authority supporting requiring that level of specificity at the discovery stage. Further, as seen in the documents that it *has* produced, Ford itself has been ▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ "shift quality" concerns,[5] so it has no basis to insist that Plaintiffs do so simply to access relevant discovery. Plaintiffs' have limited their Request no. 22 to failure and replacement rate analyses to the Transmission at issue.[6] That is sufficient.

In fact, the very example that Ford presents in support of its position, perfectly illustrates why Plaintiffs' RFP no. 22 should, in fact, *not* be narrowed further. Ford claims that "Ford's analysis of the failure rate of an oil pan on the transmission is patently not relevant because it does not relate to shift quality" (*see* Opp., p. 10), but this is simply untrue. Ford's own documents

---

[5] *See e.g.,* Exhibit F (considering whether ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ was related to issues of ▉▉▉▉▉▉▉▉); Exhibit H (including draft Technical Service Bulletin for shift issues relating to ▉▉▉▉▉▉▉▉); Exhibit G (discussing shift concerns caused by ▉▉▉ ▉▉▉▉▉▉); Exhibit K (discussing issue with ▉▉▉▉▉▉▉ possibly related to shift concerns); Exhibit J (considering whether shift issues ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉); Exhibit I (theorizing that an issue with the ▉▉▉▉▉▉ ▉▉▉▉▉ might be causing the vehicle to shudder).

[6] Ford's claim that Plaintiffs are "seeking failure rates for *all parts*" (*see* Opp., p. 10 (emphasis in original)), is not only untrue, but is contradicted by Ford itself just a page earlier: "Plaintiffs' 'amended' Request No. 22 seeks … investigation(s) into the projected and/or actual failure and replacement rate *of the TRANSMISSION.*" *Id.* p. 9 (quoting Plaintiffs' RFP No. 22) (emphasis added).

7

reveal that one of Ford's investigations into, and theories regarding "harsh [] shift" involved "███ ███████████████████████████" in a 10R80 Transmission. *See* Exhibit F. Thus, "Ford's analysis of the failure rate of an oil pan on the transmission" *is* relevant, as are any other failure or replacement rates *related to the 10R80 Transmission* (as Plaintiffs' RFP no. 22 specifies).

### IV. REQUESTS FOR PRODUCTION 13, 49, & 50 SEEK RELEVANT INFORMATION REGARDING MANUFACTURING AND PRODUCTION COSTS FOR THE 10R80 TRANSMISSION.

Ford claims that Plaintiffs' RFP nos. 13, 49, and 50 are irrelevant because Plaintiffs allege that the 10R80 transmission contains a design defect, not a manufacturing defect. Opp., p. 11. Preliminarily, such an argument verges on nonsensical: the comparison of design defect versus manufacturing defect *claims* is not analogous to a comparison of design versus manufacturing *costs*. Moreover, it is uncontroverted that nearly all of Plaintiffs' claims assert that Ford's F-150 trucks were priced too high because they were equipped with a defective transmission. *See e.g.,* Plaintiffs' Consolidated Class Action Complaint, ECF Dkt. No. 63, ¶¶ 236 (breach of implied warranty), 249 (breach of express warranty), 274 (negligence), 285 (fraud/fraudulent concealment), 294 (unjust enrichment). The costs of manufacturing and production directly affects the cost of transmissions as well as the cost of the vehicles themselves, which impacts the (too high) price that the putative class members paid.

Further, as Plaintiffs have explained to Ford, manufacturing costs of the Class Vehicles—along with Ford's pricing decisions and the price demanded—are all relevant to establishing Ford's profit margins on the defective vehicles, as well as illustrating Ford's motivation for falsely advertising the 10R80 and fraudulently concealing its defects.

### V. REQUEST FOR PRODUCTION NO. 48 SEEKS RELEVANT PRICE SETTING INFORMATION.

As with manufacturing costs, Ford claims that price setting of Ford's F-150 pickup trucks is irrelevant. Opp., p. 12. Again, Plaintiffs have alleged in nearly all their claims that Ford's F-150s are priced too high because the 10R80 transmission is defective and where, as here, Plaintiffs claim that the product is priced too high, price setting is relevant in establishing Ford's motivations for selling a defective product.

It is true that Ford has produced price lists, but request no. 48 seeks more than the overall price of Ford's F-150 trucks. For instance, it seeks information on *how* Ford determined pricing and *why* Ford chose to price their F-150 trucks as they did. Request no. 40 also seeks information about how the 10R80 Transmission affected the price of vehicles. Thus, a bare list of prices charged for various F-150 models barely scratches the surface of responding to this request.

It is also true that Plaintiffs have acknowledged that they are not interested in price setting on "stereos or airbags," and so, to the extent pricing decisions by Ford were so narrowly circumscribed, Plaintiffs will accept such narrowed responses from Ford. *See* Opp., p. 13; *see also,* Exhibit C. However, because it seems unlikely that Ford conducts its pricing analyses or decisions on such a granular scale, Plaintiffs have maintained that to the extent pricing decisions are made more holistically, Plaintiffs are seeking (and entitled to) all such discussions.

As for Ford's claim that this request is not proportional to the needs of the case because it involves proprietary information (Opp., at 13), Plaintiffs' Motion has already demonstrated that such arguments are not appropriate where, as here, there is a protective order in place (and one which even provides for "HIGHLY CONFIDENTIAL" and "OUTSIDE COUNSEL ONLY"

designations). *See* Motion, pp. 6-8. Ford has not provided any compelling authority to the contrary.[7]

## VI. FORD REFUSES TO USE SEARCH TERMS, EVEN WHERE APPROPRIATE.

With respect to RFP no. 39—at least the "meeting minutes" issue presented in Plaintiffs' Motion—Ford claims that Plaintiffs have not identified any documents that Ford should be compelled to produce. Opp., p. 15. But Plaintiffs are clear that they are seeking a complete and fulsome production of meeting minutes in response to this request for production. Motion, p. 9. Although Ford claims that it has already produced such documents (*see* Opp., p. 14), it cannot provide any assurance that its production is complete and unreasonably refuses to employ search terms to confirm the same.

In refusing to use search terms, Ford asserts that it alone has the power to decide whether search terms are used in responding to discovery requests. Opp., p. 13-14. However, the parties previously agreed not only to use search terms where appropriate, but also to meet and confer regarding their use. *See* Joint Discovery Plan, ECF Dkt. No. 136, ¶ 9. There is no question that search terms are appropriate in situations like this, where there are specific words or phrases which could be applied to the email accounts and files of relevant custodians. *Burd v. Ford Motor Co.,*

---

[7] Ford reliance on *Fessenden v. Reliance Standard Life Ins. Co.* is misplaced. *See* Opp., p. 13 (*citing* 2020 WL 1862193, at *7 (N.D. Ind. Apr. 14, 2020)). Not only is *Fessenden* factually dissimilar—the plaintiff was challenging denial of disability benefits from an insurance company, and sought to learn the price paid by the insurer to a third-party which reviewed the claim—but the "price" sought in that case was a remote issue. 2020 WL 1862193, at *3 (finding not even a "scintilla of evidence" demonstrating the relevance of the pricing information being sought). Here, price setting is not a remote issue. Rather, it is directly relevant to Plaintiffs' claims that Ford's F-150s were priced too high.

10

No. 3:13-CV-20976, 2015 WL 4137915, at *9-10 (S.D.W. Va. July 8, 2015).[8] Further, Plaintiffs have repeatedly asked Ford to use search terms. *See, e.g.,* Exhibits A and D.

### VII. FORD HAS NOT PRODUCED CONJOINT ANALYSES NOR CONFIRMED THAT THEY WILL EVER BE PRODUCED.

Ford claims that it has already agreed to determine "whether any conjoint analysis exist with respect to the 2017- 2020 Ford F-150 and the 10R80 transmission" and that this Motion to Compel is moot as a result. Ford Memorandum at 15; *see also,* Ford Letter sent to Plaintiffs on September 23, 2022.[9] However, Ford has yet to identify whether such conjoint analyses exist, has made no indication of when it intends to do so (and, in any event, has ignored several self-assigned deadlines in this case already), and has made no assurances that it will ultimately provide Plaintiffs with the analyses that they seek.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Motion to Compel Discovery be granted against Defendant Ford Motor Company.

---

[8] Although *Burd* is directly relevant to this issue—even involving Ford itself, and the *same* obstructionist discovery tactics employed here (*see* 2015 WL 4137915, at *9-10)—Ford does not even attempt to address it in its Opposition.

[9] It is worth noting that—despite the implication in Ford's Opposition (*see* Opp., pp. 2-3) that "Plaintiffs responded to Ford's letter on September 9[,] Ford responded on September 23 … [and *then*] Plaintiffs filed their Motion on September 23"—Plaintiffs filed their Motion at approximately 3 p.m., while Ford did not send its September 23 correspondence until 4:30 p.m.

Further, Ford incorrectly states that its September 23 correspondence "advised Plaintiffs that its production would likely be completed in the next *three* weeks" (Opp., p. 3 (emphasis supplied)); in fact, Ford's September 23 correspondence states that "in response to your request for a date by which the proffered documents will be produced, Ford advises that *such documents will be produced within the next two weeks*." Exhibit E, letter from Jodi Schebel dated September 23, 2022 (emphasis supplied). Now, *three weeks* after that correspondence, Ford *still* has not made the promised production.

DATED: October 14, 2022    Respectfully submitted,

/s/ *Mitchell Breit*
Mitchell Breit
Leland H. Belew
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
405 East 50th Street
New York, NY 10022
T: 347.668.8445
mbreit@milberg.com
lbelew@milberg.com

Gregory F. Coleman
Ryan P. McMillan*
Mark E. Silvey*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: (865) 247-0080
F: (865) 522-0049
gcoleman@milberg.com
msilvey@milberg.com
rmcmillan@milberg.com

John R. Fabry*
**THE CARLSON LAW FIRM, P.C.**
1717 N. Interstate Highway 35
Suite 305
Round Rock, Texas 78664
T: (512) 671-7277
F: (512) 238-0275
JFabry@carlsonattorneys.com

Sidney F. Robert*
**BRENT COON AND ASSOCIATES**
300 Fannin, Suite 200
Houston, Texas 77002
T: 713-225-1682
F: 713-225-1785
sidney.robert@bcoonlaw.com

Edward A. Wallace
Mark R. Miller
**WALLACE MILLER**

12

150 N. Wacker Drive, Suite 1100
Chicago, IL 60606
T: (312) 261-6193
F: (312) 275-8174
eaw@wallacemiller.com
mrm@wallacemiller.com

*ATTORNEYS FOR PLAINTIFF*

\* admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on October 14, 2022, on all counsel of record via CM/ECF, pursuant to the Federal Rules of Civil Procedure.

/s/ *Mitchell Breit*
Mitchell Breit