# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **JUSTIN O'CONNOR, STANISLAW ZIELINSKI, DANIEL FAIR, BRYAN SMITH, JASON STEEN, WILLIAM FIEDLER, MICHAEL BARCELONA, ROBERT MARINO, BRIAN DOUGHERTY, SUSAN HELLER, VICTOR ORNDORFF, and MICHAEL MCDONALD on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**FORD MOTOR COMPANY,**<br><br>**Defendant.** | **No. 19 C 5045**<br><br>**Magistrate Judge Maria Valdez** |

## ORDER

This matter is before the Court on Plaintiffs' Motion to Compel Discovery [Doc. No. 152]. For the reasons that follow, Plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

This putative class action lawsuit involves the transmissions on Defendant Ford Motor Company's Model Year 2017-2020 Ford F-150 vehicles. Plaintiffs bring the action individually and on behalf of all similarly situated persons who purchased or leased the subject vehicles. Plaintiffs allege that the subject vehicles

have "defects contained in the Vehicles' 10R80, a 10-speed automatic transmission that can shift harshly and erratically, causing the vehicle to jerk, lunge, and hesitate between gears." (Am. Compl. ¶ 3.) Plaintiffs assert that, despite Ford's knowledge of the transmission defects, the company "has refused to recall or replace the defective Transmissions." (*Id.* at ¶ 5.) According to Plaintiffs, had they "known about the Transmission Defect at the time of sale or lease," they "would not have purchased" the subject vehicles "or would have paid less for them." (*Id.* at ¶ 10.) Several discovery disputes have arisen between the parties and they were not able to resolve their disputes through the required Local Rule 37.2 procedure. Plaintiffs now move for an order compelling Ford to answer certain amended interrogatories and to produce documents in response to certain amended requests for production. The disputed discovery requests will be addressed below in turn.

## DISCUSSION

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 34; Fed. R. Civ. P. 37(a)(3)(B). "The party requesting discovery bears the initial burden of establishing its relevancy." *Eternity Mart, Inc. v. Nature's*

*Sources, LLC*, No. 19-cv-02436, 2019 U.S. Dist. LEXIS 198880, at *4 (N.D. Ill. Nov. 15, 2019) (citations omitted); *see also Art Akiane LLC v. Art & SoulWorks, LLC*, No. 19 C 2952, 2020 WL 6509228, at *3 (N.D. Ill. Nov. 5, 2020) (collecting cases). If the requesting party meets its burden, "the party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Sols. Team v. Oak St. Health, MSO, LLC*, No. 17 CV 1879, 2021 U.S. Dist. LEXIS 132847, at *7 (N.D. Ill. July 16, 2021) (citation omitted).

## I.    PERSONS ASSISTING WITH DISCOVERY RESPONSES

Plaintiffs' amended Interrogatory No. 1 asks Ford to identify all persons "who provided facts or documents, or identified documents, in response to any interrogatory or request for production." [Doc. No. 152-1 at 4.] Ford argues that the identity of individuals who assisted the company with its discovery responses is protected from disclosure by the work product doctrine and is improper "discovery on discovery." The Court rejects Ford's position and finds that Ford is obligated to answer this standard interrogatory. *See Computer Assocs. Int'l, Inc. v. Quest Software, Inc.*, No. 02 C 4721, 2003 WL 22159022, at *1 (N.D. Ill. Sept. 17, 2003) ("CA must turn over the names of the current and former Quest employees it has interviewed in connection with this litigation."); *Equal Emp. Opportunity Comm'n v. Sterling Jewelers In.*, No. 08-CV-00706, 2010 WL 2803017, at *4 (W.D.N.Y. July 15, 2010) ("Sterling is entitled to the identity of the individuals that assisted in preparation of the interrogatory responses."); *Ballard v. Allegheny Airlines, Inc.*, 54 F.R.D. 67, 69-70 (E.D. Pa. 1972) ("[I]nterrogatory 69 seeks the names of persons

who assisted in preparation of the interrogatories and those having relevant information. A work product objection is without merit.") (citation omitted); *Ramos v. Town of E. Hartford*, No. 3:16-CV-166, 2016 WL 7340282, at *7 (D. Conn. Dec. 19, 2016) ("[T]his Court will not hold that the 'identity of every individual, with the exception of counsel, who assisted in the preparation of the responses to these interrogatories or who engaged in the search for documents responsive to the plaintiff's requests for production of documents' constitutes work product."). Accordingly, Ford is ordered to provide a full response to Interrogatory No. 1 within 28 days of this Order.

## II.    DESIGN OF THE TRANSMISSION

Plaintiffs' amended Interrogatory No. 2 asks Ford to identify all persons "who have materially participated in the design, development, engineering, manufacture, production, assembly, testing, modification, or investigation of" the subject transmission. [Doc. No. 152-1 at 6.] As an initial matter, the Court finds that Interrogatory No. 2 is patently overbroad to the extent it seeks the identity of individuals who participated in the "manufacture, production, [and] assembly" of the subject transmission. The Court agrees with Ford that, as drafted, Interrogatory No. 2 overreaches in seeking to encompass "[e]veryone who touches the transmission . . . as well as those involved with the transmissions after the vehicles are sold." (Def.'s Resp. at 6.) Importantly, Plaintiffs revised Interrogatory No. 2 to include people who "materially participated" in the design of the transmission, rather than those who just "participated." [Doc. No. 152-1 at 4-6.] In response to

Interrogatory No. 2, Ford has already identified eight Ford employees who comprise the company's Transmission Service Engineer, 10R80 Systems Supervisor, Product Development Engineer, Transmission Components & Systems Chief Engineer, Transmission Driveline Engineering Manager, Calibration Supervisor, Engineering Manager for Transmission Systems, and 10R Product Analyst. [*Id.* at 5.] Ford has stated that these eight employees "represent a reasonable and proportionate number of individuals involved." [*Id.*] The Court accepts Ford's representation in that regard and finds that the answer Ford has already given satisfies Plaintiffs' request for an identification of employees who "materially participated" in the design and development of the subject transmission. Accordingly, Plaintiffs' motion to compel as to Interrogatory No. 2 is denied.

## III. THE TRANSMISSION'S COMPONENT PARTS

Plaintiffs' amended Interrogatory No. 8 asks Ford to identify "every part or component of" the subject transmission. [Doc. No. 152-1 at 7.] According to Ford, responding to this interrogatory "would be unduly burdensome because of the number of . . . parts involved" as the "transmission is made up of hundreds of parts and sub-components." (Def.'s Resp. at 6.) As an initial matter, the Court agrees with Plaintiffs that it is implausible "that Ford is unable to readily compile a list of the components which are installed" in the subject transmission. (Pls.' Reply at 4.) Furthermore, the Court finds that it is not unreasonable to require Ford to identify "hundreds" of parts. Plaintiffs appear to clarify in their reply brief that they are looking for "a list of the primary components and subparts within the

Transmission." (*Id.* at 5.) Consistent with that statement, Ford is ordered to answer Interrogatory No. 8 by providing a list of the transmission's primary components and subparts within 28 days of this Order.

## IV.   FAILURE AND REPLACEMENT RATE

Plaintiffs' amended Request for Production No. 22 asks Ford to produce all "final versions" of documents "constituting [Ford's] investigation(s) into the projected and/or actual failure and replacement rate of" the subject transmission "including any statistical studies or Weibuhl analysis, root cause analysis, modeling, forecasting or conducting of predictive analysis." [Doc. No. 152-1 at 9.] As an initial matter, the Court agrees with Plaintiffs that "Ford's investigations into the scope of the Defect – including when such investigations were conducted, and what they discovered" are plainly relevant topics in this suit. (Pls.' Mot. at 5.) Ford has taken the position that Request for Production No. 22 should be narrowed to "some specific and relevant part or component of the 10R80 transmission on which Ford could focus." (Def.'s Resp. at 10.) The Court rejects Ford's stance in that regard. As characterized by Plaintiffs in their motion, Request for Production No. 22 seeks "final reports from Ford's investigation into failure and replacement rates of the Transmissions." (Pls.' Mot. at 5.) The Court believes that request is reasonable and finds that Plaintiffs need not limit the request further to a particular component. Accordingly, to the extent it has not yet done so (as Ford represents that it has already produced a significant number of documents), Ford is ordered to

produce final reports from Ford's investigations into the failure and replacement rates of the subject transmissions within 28 days of this Order.

## V.     MANUFACTURING COSTS

Plaintiffs' amended Request for Production No. 13 asks Ford to produce documents "sufficient to identify the manufacturing costs of" the subject transmission and "communications about those manufacturing costs." [Doc. No. 152-1 at 8.] Relatedly, Plaintiffs' amended Requests for Production Nos. 49 and 50 ask Ford to produce documents which "show, or are sufficient to determine" the "fixed costs" and "variable costs" for the production of the subject vehicles. [*Id.* at 14.] Ford complains that Plaintiffs have not sufficiently explained the relevance of the requested cost documents. However, Plaintiffs point to their allegations that the subject vehicles were priced too high and clarify that "[t]he costs of manufacturing and production directly affects the cost of transmissions as well as the cost of the vehicle themselves, which impacts the (too high) price that the putative class members paid." (Pls.' Reply at 8.) The Court finds that Plaintiffs have sufficiently demonstrated relevance and further finds that requiring Ford to produce documents sufficient to determine the pertinent costs is proportional to the needs of the case. Accordingly, Ford is ordered to produce documents sufficient to determine manufacturing costs, fixed costs, and variable costs within 28 days of this Order.

## VI.     PRICE SETTING

Plaintiffs' amended Request for Production No. 48 asks Ford to produce:

DOCUMENTS and communications reflecting or discussing price setting for the CLASS VEHICLES, including but not limited to, price

setting in relation to competitor vehicles, and including DOCUMENTS and communications identifying the steps you take and factors YOU consider to determine whether to lower the prices for CLASS VEHILCES in response to competitor actions and/or the circumstances under which YOU would lower the prices for CLASS VEHICLES in response to competitor actions.

[Doc. No. 152-1 at 13.]

The Court agrees with Plaintiffs that the topic of price setting is relevant in light of Plaintiffs' fundamental allegations that the subject vehicles were priced too high. However, the Court also agrees with Ford that Request for Production No. 48 is overly broad as propounded. Given these competing considerations, the Court finds that Request for Production No. 48 would be more appropriate as an interrogatory. Accordingly, within 28 days of this Order, Ford is ordered to provide a narrative response to Request for Production No. 48 in which it fulsomely describes Ford's processes for price setting and/or lowering prices for the subject vehicles in relation to competitor vehicles and competitor actions.

## VII. CONJOINT ANALYSIS

Plaintiffs' amended Request for Production No. 40 asks Ford to produce documents "sufficient to show any conjoint analysis" in the past five years. [Doc. No. 152-1 at 12.] Ford states that Plaintiffs' motion as it pertains to Request for Production No. 40 is "moot because Ford has agreed to the relief requested." (Def.'s Resp. at 1.) More specifically, Ford states that it "has already agreed to determine 'whether any conjoint analyses exist'" and to "meet and confer regarding the results of that search to determine the scope of any production." (*Id.* at 15.) However, Plaintiffs complain that "Ford has yet to identify whether such conjoint analyses

8

exist, has made no indication of when it intends to do so . . . and has made no assurance that it will ultimately provide Plaintiffs with the analyses that they seek." (Pls.' Reply at 11.) In light of Ford's agreement on the topic (but apparent lack of action to date), Ford is ordered to determine whether any conjoint analyses exist and to produce any such conjoint analyses within 28 days of this Order.

## VIII. SEARCH TERMS

Plaintiffs' amended Request for Production No. 39 asks Ford to produce the company's market analyses and marketing plans. In their motion, per the heading related to Request for Production No. 39, Plaintiffs appear to ask this Court to compel Ford to "use search terms where appropriate." (Pls.' Mot. at 8.) However, as Ford points out, Plaintiffs have not actually identified any documents that Ford should be compelled to produce. Further, Plaintiffs have not raised any search terms they think Ford should be required to run. Given Plaintiffs' complete lack of showing in that regard, Plaintiffs' motion to compel as to Request for Production No. 39 is denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion to Compel Discovery [Doc. No. 152] is granted in part and denied in part as specified herein.

**SO ORDERED.**

**ENTERED:**

**DATE:**   October 21, 2022 

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**

9