# EXHIBIT K



Leland H. Belew
(865) 412-2700
lbelew@milberg.com
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

October 20, 2022

**Transmitted via Email**
Jodi Schebel
BOWMAN AND BROOK
41000 Woodward Avenue
Suite 200 East
Bloomfield Hills, MI 48304]
Telephone: 248.205.3352
Facsimile: 248.205.3399
Email: Jodi.Schebel@bowmanandbrooke.com

Jodi,

Although there are several discovery issues under discussion between the parties, I write this letter specifically with respect to Ford's Responses and Objections to Plaintiffs' Second Set of Interrogatories and Second and Third Sets of Requests for Production ("RFPs").

As with Ford's previous discovery responses, these are filled with boilerplate objections, many of which appear to be copied and pasted from past documents. Therefore, while this letter attempts to address Ford's substantive objections, if Ford has an actual basis for withholding information and documents that is not addressed here, please identify it immediately so that we can meet and confer to try to address Ford's concerns.

Percipient Witnesses and Their Roles

Certain of Plaintiffs' requests are directed at identifying relevant percipient witnesses—those Ford employees who investigated shift concerns with the 10R80 in the field, those who investigated the same at Ford's corporate headquarters, and the general organizational structure of employees involved with the 10R80 transmission—and obtaining relevant documents and communications from those individuals (i.e., Interrogatory nos. 22 and 24, and RFP nos. 61 and 65). Similar to Interrogatory nos. 1, 2, and 8, these discovery requests seek basic information directly relevant to Plaintiffs' claims, and Ford's refusal to engage in the discovery process in good-faith is not well taken.

Interrogatory no. 22[1] seeks the identity and contact information of Ford's Field Service Engineers ("FSEs"). FSEs are not only recipients of escalated concerns by dealerships and technicians, but they also conduct inspections of vehicles with issues in the field, which includes incidents involving shifting issues related to defective 10R80

---

[1] **INTERROGATORY NO. 22:** Identify (by name, complete street address, contact name, and telephone number) ALL PERSONS employed by Ford as field service engineers for the geographical areas covering each of the named Plaintiffs.

Affiliates/Locations | California | Chicago | Georgia | Kentucky | Mississippi | New Jersey | New York |
North Carolina | Puerto Rico | South Carolina | Tennessee | Washington | Washington D.C. |
Germany | Netherlands | Portugal | United Kingdom
**www.milberg.com**

Ms. Schebel
October 20, 2022
Page 2

transmissions. As a result, these FSEs have first-hand knowledge about shifting concerns with the 10R80 transmissions. Further, because Plaintiffs have limited their request to only those FSEs covering "the geographical areas [for] each of the named Plaintiffs," this request is directly tied to witnesses who have percipient information related to the specific putative subclasses and how common these issues are within each Plaintiffs' region.

Ford responds that FSEs "who may have inspected the named Plaintiffs' vehicles are identified in the repair records for such vehicles." While it may be true that FSEs who worked on Plaintiffs' specific vehicles are identified in those records, that response is obviously incomplete as the identity of other FSEs from those regions are not identified. (Further, FSEs are sometimes mentioned generally in these records without providing their name, *see* FORD_O'CONNOR_000000541.) Nor is it appropriate to respond to an interrogatory by referring to some documents which may or may not be in the requesting parties' possession; to the extent FRCP 33 permits production of business records in lieu of an interrogatory response, it requires that the documents actually be produced, and "specif[ied] in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," but most importantly it requires that "the burden of deriving or ascertaining the answer [by reviewing records] will be substantially the same for either party." Ford cannot be contending that it would have to examine repair records to identify which FSEs it employs in which areas of the country.

Ford further objects that this request is burdensome, and overbroad, on a number of grounds. But Ford cannot reasonably claim that it does not have readily available records of its current and former employees; maintaining employee records is a basic duty of employers. Ford's objection that the request is not reasonably bounded in time—and "unlimited in time"—is similarly baseless, as the parties agreed to a reasonable timeframe in their joint discovery plan. Moreover, Plaintiffs will accept a response which is limited to those individuals who have held an FSE position for the relevant geographical regions since the first F150s installed with a 10R80 transmission were available for sale.

Ford claims that because FSEs "changed over the course of several years, as individuals and employees change positions, retire or otherwise move within the company or outside of Ford," the "Interrogatory [is] unreasonable and maybe impossible to respond to." Is Ford's position that it cannot identify the FSEs responsible for fewer than 10 geographical regions over the last 5-6 years? If so, please identify how far back Ford can provide information for, when earlier information was lost, and how, so that Plaintiffs can determine the best way to proceed.

As for Ford's objection that "'geographical areas covering each of the named Plaintiffs' lacks reasonable specificity because it is undefined and therefore vague," we apologize for the confusion. It is our understanding that each FSE is responsible for field issues which arise with a certain geographical area, encompassing approximately 20 different dealerships; Interrogatory no. 22 is therefore seeking the identity of those FSEs who are, or have been, responsible for the geographical regions which encompass the dealership(s) where the named Plaintiffs' vehicles were purchased, inspected, and/or serviced.

Finally, Ford's claim that Interrogatory no. 22 is unduly burdensome because it is not limited to individuals with key knowledge of the 10R80 transmission is nonsensical. An interrogatory such as Ford proposes would require *additional* work from Ford as it would require interviews, record review, or some other way to determine which FSEs have been involved with field issues related to shifting concerns with 10R80

Ms. Schebel
October 20, 2022
Page 3

transmissions, and which have not. Perhaps more importantly, though, there is no indication that such a distinction exists amongst FSEs.

Relatedly, RFP no. 61[2] seeks documents and communications from these FSEs concerning the 10R80 transmission. Ford's objections to this request largely copy those from Interrogatory no. 22, and so are addressed above. Ford also objects, however, that RFP 61 "fails to describe the documents being sought with reasonable particularity because it seeks the production of all documents and communications [and so] is not proportional to the needs of the case." But that is incorrect; RFP no. 61 is explicitly limited to documents and communications related to the 10R80 transmission at issue in this case. Accordingly, this is an appropriate opportunity to employ search terms across the computers, files, and communications of the FSEs responsive to Interrogatory no. 22.

Interrogatory no. 24[3] seeks the identity of individuals who worked on the 10R80 transmissions at Ford's engineering facility in Dearborn, Michigan. As you stated in your August 25 correspondence, "if a transmission is returned to Ford for analysis, it may be maintained at a Ford engineering facility in Dearborn, Michigan." Plaintiffs request the identity of those involved in testing/analysis when a 10R80 transmission is returned to Ford. Plaintiffs are therefore seeking to learn who, specifically, perform the analysis on 10R80 transmissions sent to Ford's Dearborn facility. Ford's response to this interrogatory simply references its response to Interrogatory no. 23, which copies and pastes Ford's response to Interrogatory no. 2. A Party cannot simply regurgitate the same responses to separate interrogatories. Such responses are inappropriate and tantamount to no response at all. *See* Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."); *see also Johnson v. Kakvand*, 192 F.3d 656, 660 (7th Cir. 1999) (affirming sanctions for discovery abuses based in part on party's discovery responses objecting to nearly every interrogatory and production request and responding "investigation continues" to the remainder); *Gevas v. Wexford Health Sources*, No. 20 C 50146, 2021 WL 5795308, at *3 (N.D. Ill. Dec. 7, 2021)("Plaintiff's responses are evasive and tantamount to no response at all.").

RFP no. 65[4] seeks organization charts, or similar documents, showing the responsibilities and authorities of percipient witnesses—information that is clearly

---

[2] **REQUEST FOR PRODUCTION NO. 61:** Produce ALL FORD DOCUMENTS and communications sent to or from the field service engineers identified in response to Interrogatory no. 22, related to 10R80 transmissions.

[3] **INTERROGATORY NO. 24:** Identify the individuals who perform, oversee, or participate in testing and/or analysis at Ford's engineering facility in Dearborn, Michigan, related to 10R80 transmissions.

[4] **REQUEST FOR PRODUCTION NO. 65:** Produce DOCUMENTS sufficient to

(1) identify YOUR employees, in a managerial/supervisory role or higher, involved in the development, design, manufacture, and marketing of the 10R80 transmission; and

(2) describe the delegation of responsibilities and authority amongst such individuals;

for each year from 2012 to present. (Such DOCUMENTS are commonly referred to as organizational charts, "org charts," delegation flowcharts, delegation tables, work-flow responsibilities, or division of labor descriptions).

Ms. Schebel
October 20, 2022
Page 4

relevant in determining which individuals should be considered for deposition or as additional custodians. Amongst the documents produced by Ford, there are a handful of drafts of the types of documents seek, as well emails discussing their preparation,[5] but these few examples are limited to 2017 and April 2018, and appear to only be drafts. Plaintiffs simply seek a fuller set of these documents. It should also be noted—to the extent these organizational charts are not maintained in a central repository—that the examples found in Ford's current production all contain the terms "org chart" and "10R80," so it should be easy to apply relevant search terms to identify other relevant documents. Ford's objections regarding burden, overbreadth, vagueness should be obviated in light of this clarification.

Ford and GM's Joint Development of the 10R80 Transmission

Plaintiffs' other requests in these sets seek information about Ford's joint design of the 10R80 transmission with General Motors (i.e. Interrogatory no. 23 and RFP nos. 62-64). There are indications that the shift issues at the center of Plaintiffs' case are indemic to the 10-speed design, and may have been present since the initial design stage. Information on Ford's partnership with GM is therefore relevant and discoverable. Ford nevertheless refuses to respond to *any* of these requests, and only attempts to obscure the discovery process.

With respect to Interrogatory no. 23[6] and RFP no. 62,[7] (as well as RFP nos. 63 and 64 discussed below) Ford refuses to even admit that GM was involved in development stages, a well-known fact supported by documents already produced by Ford. *See, e.g.,* Ford_O'Connor_000062074-97, pp 22-24 (Discussing "Ford/GM Joint Alliance" and the Definitive Agreement to be signed that finalizes "the terms and conditions of the working relationship [between Ford and GM]" as well as "agreed Requirements/Deliverables, Roles & Responsibilities, Development timing, and Structure for Reviews & Decision Making, and more"). Instead, Ford ignores Plaintiffs' request and states only that "the 10R80 transmission was designed and developed by Ford Motor Company" and refers to all custodial documents already produced (approximately 7,300 pages). Such responses are wholly inappropriate and tantamount to no response at all. *See* Fed. R. Civ. P. 37(a)(4); *see also Johnson*, 192 F.3d 656 at 660; *Gevas* No. 20 C 50146, 2021 WL 5795308, at *3.

---

[5] *See*, FORD_O'CONNOR_000043071, FORD_O'CONNOR_000043073, FORD_O'CONNOR_000043075, FORD_O'CONNOR_000043076, FORD_O'CONNOR_000043077, FORD_O'CONNOR_000043078, FORD_O'CONNOR_000043080, FORD_O'CONNOR_000043081, FORD_O'CONNOR_000060085

[6] **INTERROGATORY NO. 23:** Describe in detail the joint development of the 10-speed transmission between Ford and General Motors ("GM"), including the division of responsibilities and/or resources committed, and the identity of individuals involved in the development (both from Ford and GM).

[7] **REQUEST FOR PRODUCTION NO. 62:** Produce ALL DOCUMENTS and CORRESPONDENCE exchanged by or between the individuals identified in response to Interrogatory no. 23, related to issues of hesitation, rough- shifting, harsh-shifting, gear stalling or slipping, failures to change gears, or failure to engage in reverse, with respect to 10R80 transmissions.

Ms. Schebel
October 20, 2022
Page 5

Ford's response to RFP no. 63[8] erroneously claims that this request is not proportional to the needs of this case because it involves proprietary information. However, whether information is proprietary is not a factor in determining proportionality (*see* Fed. R. Civ. P. 26(b)(1)), and, as Plaintiffs have repeatedly stated, such an objection is especially unfounded when a protective order is in place, as it is here. *Rice v. Nat'l Beverage Corp.*, No. 18-cv-7151, 2019 WL 10852803, at *2 (N.D. Ill.. Aug. 16, 2019); *see also Superior Graphite Co. v. Campos*, No. 19 C 5830, 2020 WL 5210841, at *2 (N.D. Ill. Sep. 1,2020) ("One of the most commonly used safeguards in trade secret cases is, of course, disclosure only to counsel in the case. Case after case has found such a safeguard appropriate and adequate").

As for RFP no. 64,[9] first, Ford refuses to produce the names of individuals who were involved in the development of the 10R80, yet insists that Plaintiffs limit their request to a specific number of individuals. How Ford expects Plaintiffs to accomplish this is a mystery. Second, Ford once again fails to substantiate its unduly burdensome claim by refusing to explain *why* production would be burdensome; baseless statements about "the passage of time" do not explain the actual burden Ford is claiming. (Unless, of course, Ford is stating that it no longer knows which individuals were involved in its joint development of a 10-speed transmission with GM, in which case Plaintiffs must understand when that information was lost, and how, in order to assess whether spoliation has occurred.) In order for Plaintiffs to understand Ford's alleged burden, and attempt to work to reduce it, Ford must provide more information: why is it burdensome to identify the Ford employees involved in the collaboration with GM, and search their correspondence for relevant communications? And how burdensome does Ford believe this process would be? For example, how long would it take and how expensive would it be? Please provide such details to substantiate Ford's burden claims; otherwise, Plaintiffs will be forced to conclude that these claims are merely pretextual.

We would like to coordinate a meet and confer conference as soon as possible, and are available on Monday (10/24) from 10 a.m. to 3 p.m., or Wednesday (10/26) from 10 a.m. to 4 p.m. (all Central time). Please let us know whether there is a time in these windows that you are available to speak. We are also still waiting for the materials promised in your August 25 and September 23 letters, as well as an opportunity to meet and confer regarding Plaintiffs' proposed 30(b)(6) deposition topics.

With regards,

Leland H. Belew

---

[8] **REQUEST FOR PRODUCTION NO. 63:** Produce DOCUMENTS sufficient to identify the terms of the relationship between Ford and General Motors governing development of a 10-speed transmission

[9] **REQUEST FOR PRODUCTION NO. 64:** Produce ALL CORRESPONDENCE between Ford and General Motors regarding development of a 10-speed transmission.

Ms. Schebel
October 20, 2022
Page 6


Cc: Stephen Thomasch (SThomasch@kasowitz.com)
Cindy Kelly (CKelly@kasowitz.com)
Hector Torres (HTorres@kasowitz.com)
Mitchell Breit (MBreit@milberg.com)
Ryan McMillan (RMcMillan@milberg.com)
Tyler Litke (TLitke@milberg.com)
Sidney Robert (Sidney.Robert@bcoonlaw.com)
Mark Miller (mrm@wallacemiller.com)
John Fabry (JFabry@carlsonattorneys.com)