UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

JUSTIN O'CONNOR, et al., on behalf of himself and all other similarly situated,

        Plaintiffs,

- against -

FORD MOTOR COMPANY,

        Defendant.

---

Case No. 19-cv-5045

Consolidated with Case Nos. 20-cv-1981, 20-cv-2095, 20-cv-2612 and 21-cv-6540

Magistrate Judge Maria Valdez

**Oral Argument Requested**

## DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS AGAINST PLAINTIFF ROBERT MARINO FOR SPOLIATION

Hector Torres (*Admitted Pro Hac Vice*)
Cindy Caranella Kelly (*Admitted Pro Hac Vice*)
Stephen P. Thomasch (*Admitted Pro Hac Vice*)
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
htorres@kasowitz.com
ckelly@kasowitz.com
sthomasch@kasowitz.com

*Attorneys for Defendant Ford Motor Company*

Mark H. Boyle
Mason W. Kienzle
DONOHUE BROWN MATHEWSON & SMYTH LLC
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone: (312) 422-0900
boyle@dbmslaw.com
kienzle@dbmslaw.com

Jodi M. Schebel (*Admitted Pro Hac Vice*)
BOWMAN AND BROOKE LLP
41000 Woodward Ave., Suite 200 East
Bloomfield Hills, MI 48304
Telephone: (312) 422-0900
jodi.schebel@bowmanandbrooke.com

*Co-Counsel for Defendant Ford Motor Company*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

I. Procedural History. ....................................................................................................... 2

II. After Commencing The *Marino* Action, Marino Disposed Of The Vehicle And Failed To Preserve Material Documents. ..................................................................... 4

ARGUMENT ............................................................................................................................. 5

I. Standard Of Review. ..................................................................................................... 5

II. The Court Should Sanction Marino For His Disposal Of Material Evidence Essential to Ford's Defenses. ........................................................................................ 5

    A. Marino Owed A Duty To Preserve The Vehicle. ............................................. 6

    B. Marino Breached His Duty By Disposing Of The Vehicle. ............................ 8

    C. Marino's Spoliation Of Material Evidence Significantly Prejudices Ford. ..... 9

    D. Marino Is At Fault And He Willfully Disposed Of The Vehicle. .................. 12

CONCLUSION ........................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Cases**  **Page(s)**

*Below by Below v. Yokohama Tire Corp.*,
   2017 WL 764824 (W.D. Wis. Feb. 27, 2017)...........................................................................13

*BMJ Partners LLC v. Arch Specialty Ins. Co.*,
   2021 WL 3709182 (N.D. Ill. Aug. 20, 2021) ..............................................................................5

*Cohn v. Guaranteed Rate, Inc.*,
   318 F.R.D. 350 (N.D. Ill. 2016)...............................................................................................6, 7

*Doyle v. Chrysler Grp. LLC*,
   2014 WL 7690155 (C.D. Cal. Oct. 9, 2014),
   *rev'd and remanded on other grounds*, 663 F. App'x 576 (9th Cir. 2016) ..........................6, 8

*Erlandson v. Ford Motor Co.*,
   2009 WL 3672898 (D. Or. Oct. 30, 2009)..................................................................7, 8, 12, 14

*Flury v. Daimler Chrysler Corp.*,
   427 F.3d 939 (11th Cir. 2005) .................................................................................................7, 8

*Greviskes v. Univ. Rsch. Ass'n, Inc.*,
   417 F.3d 752 (7th Cir. 2005) .......................................................................................................5

*Hu v. BMW of N. Am., LLC*,
   2022 WL 13837791 (D.N.J. Oct. 21, 2022)................................................................................7

*Jones v. Bremen High School Dist. 228*,
   2010 WL 2106640 (N.D. Ill. 2010) ..........................................................................................13

*Jordan v. Ford Motor Co.*,
   2010 WL 11627610 (D. Ariz. Apr. 19, 2010) .....................................................................11, 12

*Lawrence v. Harley-Davidson Motor Co., Inc.*,
   1999 WL 637172 (N.D. Ill. Aug. 12, 2019) .............................................................................12

*MacNeil Auto. Prod. Ltd. v. Cannon Auto. Ltd.*,
   2010 WL 5904124 (N.D. Ill. Nov. 2, 2010), *report and recommendation
   adopted as modified*, 2011 WL 812140 (N.D. Ill. Mar. 1, 2011) .............................................13

*Marrocco v. Gen. Motors Corp.*,
   966 F.2d 220 (7th Cir. 1992) .........................................................................................5, 12, 13

*Nationwide Mut. Ins. Co. v. Total Prop. Care Inc.*,
   2018 WL 2356214 (N.D. Ind. May 24, 2018) ..........................................................................12

*Silvestri v. Gen. Motors Corp.*,
  271 F.3d 583 (4th Cir. 2001) ...................................................................................5, 11

*Sloan Valve Co. v. Zurn Industries, Inc.*,
  2012 WL 1886353 (N.D. Ill. 2012) ................................................................................7

*Tomasian v. C.D. Peacock, Inc.*,
  2012 WL 13208522 (N.D. Ill. Nov. 8, 2012) ..................................................................7

*Trahanas v. Nw. Univ.*,
  2018 WL 11409096 (N.D. Ill. Dec. 3, 2018) ..........................................................5, 6, 7

*Victorino v. FCA US LLC*,
  2017 WL 4541653 (S.D. Cal. Oct. 11, 2017) .................................................................8

*Weidman v. Ford Motor Co.*,
  2022 WL 1071289 (E.D. Mich. Apr. 8, 2022) ................................................................9

*Woodard v. Ford Motor Co.*,
  2013 WL 3024828 (D. Or. June 13, 2013) ..........................................................7, 11, 14

Defendant Ford Motor Company ("Ford") respectfully submits this memorandum of law in support of its motion for sanctions against Plaintiff Robert Marino ("Marino") for spoliation.[1]

## PRELIMINARY STATEMENT

On January 10, 2020, Marino commenced this putative class action based on his lease of a 2019 Ford F-150 equipped with a 10R80 transmission (the "Vehicle"). Marino claims that the Vehicle's transmission is purportedly defective, causing it to shift harshly and resulting in a diminution of the Vehicle's value. Despite the centrality of the Vehicle to Marino's claims, on October 16, 2021—23 months after serving his pre-suit notice on Ford and 21 months after filing suit against Ford—he disposed of the Vehicle, and he did so without providing any notice to Ford or allowing Ford the opportunity to inspect the Vehicle. Marino also confirmed at his deposition that, as a result of his disposal of his vehicle, he had also disposed of other key evidence, including all of his vehicle maintenance records. Marino's spoliation of material evidence in this action has prejudiced significantly and irreparably Ford's ability to prepare its defense against his claims.

Sanctions for Marino's spoliation of key evidence is warranted under the controlling law. *First*, Marino was under a duty to preserve the Vehicle at the time of its disposition because he had already filed his complaint against Ford, and he knew or should have known that it constituted evidence material to his claims in this action. *Second*, Marino violated that duty by disposing of the Vehicle without providing Ford with notice or the opportunity to inspect the vehicle. *Third*, Ford has been severely prejudiced by the spoliation because it cannot inspect the Vehicle, which undermines its ability to prepare its defenses to Marino's claims, including but not limited to having its expert witness opine on the performance of the Vehicle's transmission, and establish its

---

[1] Attached in support of Ford's motion for sanctions is the Declaration of Hector Torres ("Torres Decl."). Exhibits thereto are referenced herein as "Ex."

affirmative defenses. *Fourth*, Marino's disposition of the Vehicle should be considered "at fault" or "willful" because he knowingly disposed of unquestionably material evidence.

Accordingly, because of the severe and irreparable nature of the prejudice that Marino's spoliation of evidence has caused to Ford's defenses in this action against Marino's claims, the Court should dismiss his claims, or, alternatively enter such sanctions as are just and proper.

## STATEMENT OF FACTS

**I.  Procedural History.**

On November 27, 2019, Marino served a pre-suit notice on Ford concerning claims arising from his lease of the Vehicle. (Ex. 2.) Ford timely responded to the pre-suit notice on December 18, 2019. (Ex. 3.) Shortly thereafter, on January 10, 2020, Marino filed a putative class action in the United States District Court for the District of Massachusetts, which was captioned *Marino v. Ford Motor Co.*, No. 1:20-cv-10048 (the "*Marino* Action"). (Ex. 4.) In his complaint, Marino alleged a transmission defect in the Vehicle that purportedly manifested in shifting problems. (*Id.* ¶¶ 3-5, 28-41.) In light of the factual and legal similarities between this action and the *Marino* Action, and Plaintiffs' counsel's filing of two other factually and legally similar putative class actions in January 2020, the three new actions were transferred to this District and consolidated with this action in July 2020. (ECF 57.) The consolidated action is part of the Mandatory Initial Discovery Pilot ("MIDP") program. (ECF 5.)

On September 25, 2020, Plaintiffs filed the Consolidated Amended Class Action Complaint (the "Consolidated Complaint") (Ex. 1) (ECF 63), which Ford moved to dismiss (ECF 64). Judge Dow issued a ruling on Ford's motion to dismiss on September 30, 2021, which dismissed Marino's claims for breach of the implied warranty of fitness for a particular purpose, negligence, fraudulent concealment, and unjust enrichment, but denied the motion as to his claims

2

for breach of express warranty, breach of the implied warranty of merchantability, fraud, violation of the Magnuson-Moss Warranty Act, and violation of Chapter 93A. (ECF 76.)[2]

Pursuant to the terms of the MIDP, discovery in the consolidated action was stayed until Ford filed its answer to the Consolidated Complaint on November 4, 2021. On January 13, 2022, in accordance with the Court's scheduling order, Ford served its initial discovery demands on Plaintiffs, which included requests for the production of documents, requests for admission, and interrogatories. Shortly thereafter, on March 31, 2022, Ford served a request to inspect Plaintiffs' vehicles. (Ex. 5.) On April 28, 2022, Plaintiffs served their response to Ford's request for inspection, which states that "Plaintiffs Dougherty, Marino, McDonald, and Orndorff object to this Request for Inspection because they no longer possess their vehicles." (Ex. 6.)[3] As Ford informed the Court on August 17, 2022, Ford intended to conduct its vehicle inspections as part of expert discovery. (ECF 149 at 14.)

Accordingly, on April 12, 14, 17, and 18, 2023, Ford's expert witness inspected the vehicles of four of the other five Plaintiffs. (ECF 241.)[4] On April 27, 2023, Ford served its expert reports, including the Expert Report of Matthew L. Fyie, which directly relied on the results of the vehicle inspections. In that Report, Mr. Fyie stated that "[a]bsent Mr. Marino's trade in of the vehicle" he "would have requested . . . an inspection of it." (Ex. 7, ¶ 34.)

---

[2] The order was subsequently amended on October 19, 2021 to clarify, among other things, that the Court dismissed Count 14. (*See* ECF 83.) Through Count 14, Marino had asserted a claim for breach of the implied warranty of merchantability that was wholly duplicative of Count 2. (*Id.*)

[3] Plaintiff Orndorff's claims were dismissed with prejudice by stipulation of the parties (ECF 166), and Plaintiffs Dougherty and McDonald's claims were stayed by Judge Dow pending arbitration (ECF 200). Ford reserves the right to seek sanctions for spoliation against Plaintiffs Dougherty and McDonald if the stay is subsequently lifted as to their claims.

[4] Ford was unable to inspect Mr. Smith's vehicle prior to the service of its expert reports because it was undergoing repairs on an unrelated issue that could have materially affected the results of the inspection. The parties are currently negotiating a date for Ford to inspect the vehicle prior to the service of Ford's expert rebuttal reports on June 29, 2023.

## II. After Commencing The *Marino* Action, Marino Disposed Of The Vehicle And Failed To Preserve Material Documents.

On October 16, 2021—23 months *after* serving his pre-suit notice letter on Ford and 21 months after commencing the *Marino* Action—Marino traded in the Vehicle, a 2019 Ford-150, to Westborough Ford for a 2021 Ford F-150. (Ex. 8, at 192:23-193:17, 196:14-25, 207:21-24; Ex. 9, No. 16.) Marino did so even though five months remained on his lease. (Ex. 8, at 192:23-193:14.) At deposition, Marino confirmed that he disposed of the Vehicle without providing any prior notice to Ford. (*Id.* at 216:4-6 ("Q: Did you inform Ford prior to trading in your vehicle that you intended to trade it in? A: No.").) Marino further confirmed that the Vehicle is no longer in his possession and that he could not grant Ford access to it for inspection purposes. (*Id.* at 215:12-14 ("Q: So because you trade[d] in your vehicle it's no longer in your possession is it? A: No."), 218:24-219:5 ("Q: So is it fair to say that now that you have traded in the vehicle you will not be able to grant Ford access to it so they could inspect it for this litigation? A: That is correct. I don't own it so I can't grant them access to it.").)

Marino's deposition testimony also confirmed that because of his spoliation of the Vehicle, he is no longer in possession of material documentary evidence. Specifically, Marino conceded that he no longer is in possession of vehicle-related documents that have been requested by Ford, including, "the warranty cards . . . the owner's manual, . . . the zippered book that contains the owner's manual, all my maintenance records, everything . . . the bill of sale . . . everything." (*Id.* at 132:4-18.) He further testified that, before his disposal of the vehicle, he had *not* provided a copy of those materials to his attorneys (*id.* at 132:19-21) and no longer has copies of those documents (*id.* at 131:13-132:18, 219:25-220:22).

4

# ARGUMENT

## I.  Standard Of Review.

A district court may impose sanctions for spoliation of evidence under its inherent authority. *Greviskes v. Univ. Rsch. Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005); *BMJ Partners LLC v. Arch Specialty Ins. Co.*, 2021 WL 3709182, at *2 (N.D. Ill. Aug. 20, 2021) (federal courts have "have inherent authority to sanction[ ] parties for failure to preserve potential evidence that is properly discoverable.") (citation omitted); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) ("The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation").

In determining whether to apply a discovery sanction for spoliation of evidence, courts consider whether "(1) there was a duty to preserve the specific evidence; (2) the duty was breached; (3) the other party was harmed by the breach; and (4) the breach was caused by the breaching party's willfulness, bad faith, or fault." *Trahanas v. Nw. Univ.*, 2018 WL 11409096, at *2 (N.D. Ill. Dec. 3, 2018); *see also Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) ("[S]anctions may be appropriate in any one of three instances—where the noncomplying party acted *either* with willfulness, bad faith *or* fault.") (emphasis in original). The sanction of dismissal is available regardless of whether the spoliator "displayed fault, bad faith, or willfulness." *Greviskes*, 417 F.3d at 759.

## II.  The Court Should Sanction Marino For His Disposal Of Material Evidence Essential to Ford's Defenses.

The Court should sanction Marino for his spoliation of the Vehicle. Such sanctions are appropriate because (i) Marino knew or should have known of his duty to preserve the Vehicle that was material to his claims; (ii) Marino breached that duty by disposing of the Vehicle without providing Ford with prior notice of the intended disposition even though he had already

5

commenced this action against Ford; (iii) Ford is prejudiced by the spoliation because it has been deprived of its right to inspect the Vehicle in the preparation of its defense; and (iv) Marino's disposal of the Vehicle was either at fault or willful.

### A. Marino Owed A Duty To Preserve The Vehicle.

At the time that he disposed of the Vehicle, Marino owed a duty to preserve it because he knew or should have known that it was material to his claims, and because he had already commenced this litigation.

In the Seventh Circuit, "a party has a duty to preserve evidence that it has control over and which it reasonably knows or can foresee would be material (and thus relevant) to a potential litigation." *Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 354 (N.D. Ill. 2016) (quotation omitted); *Trahanas*, 2018 WL 11409096, at *2 (same). "The duty to preserve is broad and encompasses any evidence that the non-preserving party knew or reasonably could foresee would be relevant to the action." *Cohn*, 318 F.R.D. at 354 (quotation omitted).

Here, Marino knew or reasonably should have known that the Vehicle would be relevant to this action. All of his claims are predicated on an alleged transmission defect in the Vehicle. Specifically, Marino alleges that Ford breached its express warranty by failing to repair the purported transmission defect, breached the implied warranty of merchantability because of the purported transmission defect, committed fraud by misrepresenting that the Vehicle had "smooth" shifting, and violated Chapter 93A by failing to disclose the purported transmission defect prior to his lease of the Vehicle. (Ex. 1 ¶¶ 115-17, 220-49, 277-89, 460-76.) Each claim requires a showing that the Vehicle had the specific transmission-related defect alleged in the Consolidated Complaint.

Unsurprisingly, in cases involving allegations of vehicle defects, Courts routinely have found that the vehicles are material evidence required to be preserved. *See Doyle v. Chrysler Grp.*

6

*LLC*, 2014 WL 7690155, at *3 (C.D. Cal. Oct. 9, 2014) ("When one is contemplating making a claim that a vehicle is defective, it takes no special training or particular sophistication to recognize the potential relevance of that vehicle as evidence of one's claim."), *rev'd and remanded on other grounds*, 663 F. App'x 576 (9th Cir. 2016); *Erlandson v. Ford Motor Co.*, 2009 WL 3672898, at *4 (D. Or. Oct. 30, 2009) ("[B]ecause each claim is based on an alleged defect in the [vehicle], Plaintiffs knew or should have known the [vehicle] would be material evidence in any action Plaintiffs brought from the alleged transmission 'mis-manufacture.'"); *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005) ("[P]laintiff should have known that the vehicle, which was the very subject of his lawsuit, needed to be preserved and examined as evidence central to his case."); *see also Hu v. BMW of N. Am., LLC*, 2022 WL 13837791, at *3 (D.N.J. Oct. 21, 2022) ("Here, Plaintiffs argue (and Defendants flatly deny) that the Cars had defeat devices installed which were designed to fool emissions inspections. The Cars are the case. Certainly, then, inspecting the cars is 'relevant to the party's claim or defense.'").

It is also indisputable that Marino was under a duty to preserve material evidence—such as the Vehicle—at the time that he traded it in because that duty attaches pre-litigation when a party reasonably foresees the potential for litigation, and certainly no later than the filing of the complaint. *See, e.g.*, *Sloan Valve v. Zurn Industries, Inc.*, 2012 WL 1886353, at *11 (N.D. Ill. 2012) ("The duty to preserve arises when the party knows or should know that litigation is imminent."); *Cohn*, 318 F.R.D. at 354 ("At the latest, this duty attaches when the plaintiff informs the defendant of her potential claim."); *Tomasian v. C.D. Peacock, Inc.*, 2012 WL 13208522, at *3 (N.D. Ill. Nov. 8, 2012) ("Parties to a lawsuit have a broad duty to preserve discoverable materials"); *Trahanas*, 2018 WL 11409096, at *2 ("A plaintiff's duty to preserve is more often triggered before litigation commences, in part, due to the plaintiff's control over the timing of the

7

litigation."); *see also Woodard v. Ford Motor Co.*, 2013 WL 3024828, at *4 (D. Or. June 13, 2013) ("[Plaintiff's] duty to preserve the Mustang attached when she reasonably foresaw litigation against Ford based on claims that the seatbelt was defectively manufactured or designed. [Plaintiff] clearly anticipated filing suit in this case by retaining an attorney to pursue such claims against Ford."); *Erlandson*, 2009 WL 3673898, at *5 (finding duty to preserve evidence where plaintiffs sold vehicle after threatening litigation but seven months prior to filing suit); *Flury*, 427 F.3d at 943 (recognizing pre-litigation obligation to preserve vehicle).

Marino thus was under a clear and unequivocal duty to preserve the Vehicle—evidence highly material to all of his claims—at least as early as the date on which he commenced the *Marino* Action.

### B. Marino Breached His Duty By Disposing Of The Vehicle.

Marino violated his duty to preserve material evidence by disposing of the Vehicle after commencing this action, thereby depriving Ford of its right to conduct an inspection of the Vehicle.

As demonstrated by Marino's deposition testimony and discovery responses, he disposed of the Vehicle in October 2021, which was 23 months after he informed Ford of his claims and 21 months after he commenced the *Marino* Action by filing his complaint against Ford. (Ex. 8, at 192:23-193:17, 196:14-25, 207:21-24; Ex. 9, No. 16; Ex. 4; Ex. 2).

Courts routinely find a breach of the duty to preserve evidence in vehicle defect cases where, as here, the plaintiff disposed of the vehicle after filing suit. *See, e.g.*, *Victorino v. FCA US LLC*, 2017 WL 4541653, at *8 (S.D. Cal. Oct. 11, 2017) (finding in case alleging defective cylinder that "because a complaint had already been filed, [plaintiff] had a duty to preserve evidence related to the claims in this case including the [allegedly defective cylinder] . . . . [Plaintiff] knew or should have known that any parts taken from [the] vehicle during the inspection should have been preserved."); *see also Doyle*, 2014 WL 7690155, at *2-3 (awarding sanctions of adverse inferences

8

and a finding that plaintiff is an inadequate class representative where she traded in her vehicle after contacting her attorneys but before commencing the lawsuit).

*Weidman v. Ford Motor Company*, 2022 WL 1071289 (E.D. Mich. Apr. 8, 2022), is instructive on this point. In *Weidman*, purchasers and lessees of 2013-2018 F-150 pickup trucks from eleven states filed a putative class action alleging that their vehicles contained a defective brake system. *Id.* at *1. In its motion for summary judgment, Ford argued that one plaintiff's claims should be dismissed "because he disposed of his vehicle before Ford had an opportunity to inspect it." *Id.* at *8. Specifically, the plaintiff joined the lawsuit in August 2019, but "disposed of his truck by trading it in as of April 2020" without either notifying Ford of his intent to trade-in the vehicle or providing Ford the opportunity to inspect the vehicle. *Id.* The *Weidman* court granted Ford's motion for summary judgment dismissing all of that plaintiff's claims, because of the plaintiff's violation of his "duty to preserve evidence." *Id.*

Accordingly, the Court should find that Marino breached his duty to preserve material evidence by disposing of the Vehicle.

### C. Marino's Spoliation Of Material Evidence Significantly Prejudices Ford.

Ford's ability to prepare its defense against Marino's claims has been substantially and adversely affected because Ford is unable to inspect the Vehicle to assess and respond to his defect allegations, and investigate Ford's potential affirmative defenses to his claims.

Each of Marino's claims includes elements that require evidence that his vehicle contained the alleged transmission defect, which directly implicates Ford's defenses to those claims. For example, Marino alleges that Ford (i) breached its express warranty by failing to repair the alleged defect (Ex. 1 ¶¶ 220-37), (ii) breached the implied warranty of merchantability because the Vehicle

9

was unfit for its ordinary purposes due to the alleged defect (*id.* ¶¶ 238-49),[5] and (iii) violated Chapter 93A by failing to disclose the Vehicle's purported transmission defect prior to his lease of it (*id.* ¶¶ 460-76). Similarly, Marino alleges that Ford committed fraud by representing that the Vehicle's transmission was "smooth" when it allegedly was not. (*Id.* ¶¶ 115-17, 277-89.). Each of these claims require Marino to adduce evidence that the Vehicle contained the purported transmission defect. By disposing of the Vehicle, Marino has prejudiced Ford's ability to defend against his claims, because Ford has been deprived of its right to inspect it, and to determine the veracity of Marino's allegations.

Indeed, Ford's expert witness, Matthew L. Fyie, directly relied on the results of Ford's vehicle inspections of four other Plaintiffs' vehicles to opine as to whether those vehicles suffered from transmission performance issues. Mr. Fyie was unable to inspect and thus cannot opine or render any conclusions concerning whether the Vehicle suffered from transmission performance issues. But for Mr. Marino's trade-in of the Vehicle, Mr. Fyie would have rendered such an expert opinion. Indeed, his report noted that "[a]bsent Mr. Marino's trade in of the vehicle, I would have requested . . . an inspection of it." (Ex. 7, ¶ 34.)

Marino's disposal of this material evidence likewise has deprived Ford of its right to inspect the Vehicle to ascertain the applicability of any affirmative defenses. Ford has asserted thirty-seven affirmative defenses in this action, many of which are directly and adversely affected by Ford's inability to inspect the Vehicle. (Ex. 10.) For example, Ford's Second Affirmative Defense—standing—is implicated because Marino would lack standing to assert claims on behalf of himself and/or the putative class if the Vehicle did not experience the purported transmission

---

[5] Marino's claim for violation of the Magnuson-Moss Warranty Act is premised on the same conduct underlying his warranty claims. (Ex. 1 ¶¶ 250-62.)

10

defect; Ford's Fourth Affirmative Defense—cognizable injury—is implicated to the extent that Marino demonstrates the existence of a transmission defect that caused shifting issues in some, but not all, of the Class Vehicles, as Ford could not assess whether the Vehicle was among those suffering from the purported defect; Ford's Ninth Affirmative Defense—proximate causation—is implicated because Ford cannot inspect the Vehicle and conduct a root cause analysis for the alleged shifting issues; Ford's Eleventh Affirmative Defense—intervening cause—is implicated because Ford cannot inspect the Vehicle to determine if some third-party action caused the purported shifting issues; Ford's Thirteenth Affirmative Defense—misuse—is implicated because Ford cannot inspect the Vehicle to determine if Marino misused it, causing the alleged shifting issues; Ford's Fourteenth Affirmative Defense—neglect—is implicated because Ford cannot determine whether Marino properly maintained the Vehicle; and Ford's Twenty-Third Affirmative Defense—compliance with warranty—is implicated because an inspection could demonstrate whether Marino failed to comply with his warranty obligations (*e.g.*, violating its prohibition on aftermarket alterations by non-Ford dealerships). (*See id.* at 69-73.)

In actions against automobile manufacturers alleging a defect in the automobile, courts routinely hold that the disposal of the vehicle, without first providing the manufacturer with the opportunity to inspect it, causes prejudice to the manufacturer. *See, e.g.*, *Silvestri*, 271 F.3d at 594 (finding prejudice where disposal of vehicle "denied General Motors access to the only evidence from which it could develop its defenses adequately"); *Jordan v. Ford Motor Co.*, 2010 WL 11627610, at *6 (D. Ariz. Apr. 19, 2010) ("Due to the destruction of the Escort, defendants cannot adequately muster a defense. The prejudice factor weighs in favor of dismissal."); *Woodard*, 2013 WL 3024828, at *5 (finding prejudice because plaintiff's repair of seatbelt system at issue "denied Ford the opportunity to perform its own inspection of the seatbelt system to prepare defenses");

11

*Lawrence v. Harley-Davidson Motor Co., Inc.*, 1999 WL 637172, at *3 (N.D. Ill. Aug. 12, 2019) (recognizing that "Harley-Davidson cannot properly defend itself in this action absent an inspection of the motorcycle's condition," issuing a sanction "barring evidence, direct or circumstantial, concerning the condition of the allegedly defective motorcycle" to "place the two parties on equal footing," and dismissing the claim because such sanction precluded plaintiff from establishing his claim).

Accordingly, because the indisputable evidence here demonstrates substantial prejudice to Ford as a result of Marino's spoliation of material evidence, this factor weighs in favor of dismissal. *See, e.g.*, *Erlandson*, 2009 WL 3673898, at *6 (finding "there is not any adequate substitute for the vehicle itself in adjudicating Plaintiffs' claims and Defendant's ability to evaluate and to defend against those claims. Thus, a lesser sanction than dismissal will not cure the prejudice to Defendant."); *Jordan*, 2010 WL 11627610, at *6 ("The destruction of the Escort has obscured the factual predicate of the case and has caused defendants significant prejudice, prejudice that cannot be cured by less drastic sanctions than dismissal. Thus, dismissal is warranted as a sanction.").

### D.     Marino Is At Fault And He Willfully Disposed Of The Vehicle.

The final factor considered by courts in assessing the nature and extent of sanctions is whether the evidence-destroying party's culpability "rises to a level of willfulness, bad faith, or fault." *Nationwide Mut. Ins. Co. v. Total Prop. Care Inc.*, 2018 WL 2356214, at *2 (N.D. Ind. May 24, 2018). The Seventh Circuit has recognized that the imposition of "sanctions may be appropriate in any" of the three states of culpability, *i.e.*, "where the noncomplying party acted *either* with willfulness, bad faith *or* fault." *Marrocco*, 966 F.2d at 224 (emphasis in original). Here, sanctions are appropriate both because Marino is at "fault" for his disposal of the Vehicle and because he disposed of the Vehicle willfully.

12

The Seventh Circuit applies an objective standard for purposes of this analysis—"'Fault' . . . doesn't speak to the noncomplying party's disposition at all, but rather only describes the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation." *Marrocco*, 966 F.2d at 224; *see also Jones v. Bremen High School Dist. 228*, 2010 WL 2106640, at *6 (N.D. Ill. May 25, 2010) ("Fault is defined not by the party's intent, but by the reasonableness of the party's conduct."). "Fault" thus encompasses situations where the party who disposed of the evidence showed "extraordinarily poor judgment," acted with "gross negligence," or where the disposal was not "merely . . . a mistake or carelessness." *Marrocco*, 966 F.3d at 224; *see also Jones*, 2010 WL 2106640, at *6 ("[Fault] may include gross negligence of the duty to preserve material evidence.").

Because of the centrality of the Vehicle to Marino's claims his disposition of the Vehicle before any Ford inspection was patently unreasonable and grossly negligent. Marino intentionally disposed of the vehicle even though he knew or should have known that it was essential evidence concerning his claims. *MacNeil Auto. Prod. Ltd. v. Cannon Auto. Ltd.*, 2010 WL 5904124, at *7-8 (N.D. Ill. Nov. 2, 2010) (finding that defendant's destruction of machinery at issue in suit was "faulty" since "no reasonable litigant would have destroyed the very evidence that would have helped it defend against a pending suit" and recommending that defendant be precluded from introducing any evidence concerning the proper functioning of the machinery), *report and recommendation adopted as modified*, 2011 WL 812140 (N.D. Ill. Mar. 1, 2011).[6]

---

[6] Marino's disposal of the Vehicle here is "all the more troubling because plaintiffs were represented by a sophisticated personal injury law firm[s], who know full well of their duty to maintain evidence relevant to likely litigation." *Below by Below v. Yokohama Tire Corp.*, 2017 WL 764824, at *2 (W.D. Wis. Feb. 27, 2017).

13

Sanctions are also appropriate because Marino's disposal of the Vehicle was willful. In automotive defect cases involving spoliation of vehicles, a plaintiff's "destruction of evidence qualifies as willful spoliation if the party has 'some notice that the [evidence was] potentially relevant to the litigation before [it was] destroyed.'" *Erlandson*, 2009 WL 3672898, at *4 (citation omitted); *Woodard*, 2013 WL 3024828, at *3 (same).

In *Woodard*, for example, which involved an allegedly defective seatbelt, the court found that plaintiff "willfully spoliated material evidence when she had her Mustang completely repaired" after retaining counsel because "[h]aving the Mustang's seatbelt system in the same condition as it was immediately following the accident is central to Woodard's claims: without it, there is no way to determine if the seatbelt Woodard was wearing was in fact defective, and, if so, whether it was the cause of Woodard's injuries." 2013 WL 3024828, at *4 (action dismissed as sanction for willful spoliation). Similarly, in *Erlandson*, which was a products liability and breach of warranty case against Ford, the court found the plaintiff's trade-in of her vehicle—which occurred before she retained counsel and a year before filing suit—was willful and dismissed the case, because the "alleged defects are at the crux of all of Plaintiffs' claims" and plaintiff therefore knew or should have known the vehicle would be material to her claim. 2009 WL 3672898, at *4.

Accordingly, Marino's spoliation of the Vehicle was either at fault or willful.

## CONCLUSION

Based on the foregoing, Ford respectfully requests that the Court issue an order dismissing Plaintiff Marino from this action or imposing other sanctions as are just and proper.

14

Dated: May 5, 2023

| | |
|---|---|
| KASOWITZ BENSON TORRES LLP | DONOHUE BROWN MATHEWSON & SMYTH LLC |
| By: */s/ Hector Torres*<br>Hector Torres (*Admitted Pro Hac Vice*)<br>Cindy Caranella Kelly (*Admitted Pro Hac Vice*)<br>Stephen P. Thomasch (*Admitted Pro Hac Vice*)<br>1633 Broadway<br>New York, New York 10019<br>Telephone: (212) 506-1700<br>htorres@kasowitz.com<br>ckelly@kasowitz.com<br>sthomasch@kasowitz.com<br><br>*Attorneys for Defendant Ford Motor Company* | Mark H. Boyle<br>Mason W. Kienzle<br>140 South Dearborn Street, Suite 800<br>Chicago, IL 60603<br>Telephone: (312) 422-0900<br>boyle@dbmslaw.com<br>kienzle@dbmslaw.com<br><br>Jodi M. Schebel (*Admitted Pro Hac Vice*)<br>BOWMAN AND BROOKE LLP<br>41000 Woodward Ave., Suite 200 East<br>Bloomfield Hills, MI 48304<br>Telephone: (312) 422-0900<br>jodi.schebel@bowmanandbrooke.com<br><br>*Co-Counsel for Defendant Ford Motor Company* |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served on May 5, 2023 on all counsel of record via CM/ECF, pursuant to the Federal Rules of Civil Procedure.

>                             */s/ Hector Torres*
>                             Hector Torres