IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Justin O'Connor, et al., on behalf of himself and all others similarly situated )<br><br>Plaintiffs, )<br><br>v. )<br><br>Ford Motor Company, )<br><br>Defendant. ) | No. 19 C 5045<br><br>Consolidated with Nos.<br>20 C 1981, 20 C 2095,<br>20 C 2612, and 21 C 6540 |

Memorandum Opinion and Order

In this consolidated putative class action, plaintiffs seek damages from Ford Motor Company ("Ford") based on Ford's alleged sale and lease of 2017 to 2020 Model Year Ford F-150 trucks with defective 10R80 10-speed automatic transmissions. Named plaintiff Robert Marino traded in his vehicle in October 2021. Ford now moves for sanctions against Marino for spoliation of evidence. Specifically, Ford seeks dismissal of Marino's claims. For the following reasons, I grant the motion.

I.

The operative complaint alleges "one or more design and/or manufacturing defects, including but not limited to defects contained in the Vehicles' 10R80, a 10-speed automatic

transmission that can shift harshly and erratically, causing the vehicle to jerk, lunge, and hesitate between gears." Consolidated Amended Complaint, ECF 63 ¶ 3. Marino leased a 2019 Ford F-150 (one of the "Vehicles" described in the Consolidated Amended Complaint) starting in 2019. He alleges that, "[a]pproximately two months after leasing the Vehicle, Mr. Marino started to notice a loud 'clunk' or 'bang' noise upon starting the engine" as well as "slipping and jerking when changing gears," and that these problems persisted. *Id.* ¶¶ 119, 121. Based on these problems, Marino brings claims for breach of express warranty, breach of the implied warranty of merchantability, fraud, violation of the Magnuson-Moss Warranty Act, and violation of Massachusetts' Consumer Protection Law (Chapter 93A)--several other claims were earlier dismissed, *see* ECF 83.

In November 2019, Marino served pre-suit notice on Ford. On January 10, 2020, Marino filed a putative class action in federal district court in Massachusetts, which was transferred to this district and consolidated in July 2020. After a discovery stay pursuant to the Mandatory Initial Discovery Pilot ("MIDP") program was lifted in November 2021, Ford served its initial discovery demands on January 13, 2022. In responding to that discovery request in February 2022, Marino notified Ford that he was no longer in possession of the vehicle, as he had traded it in in October 2021. On June 7, 2022, Marino amended his response to

2

correct the dealership to which the vehicle was returned. Ford served requests to inspect all named plaintiffs' vehicles on March 31, 2022. Marino objected to that request because he no longer possessed his vehicle.

## II.

As part of their inherent authority, district courts may impose sanctions for spoliation of evidence. *See Greviskes v. Univs. Rsch. Ass'n, Inc.*, 417 F.3d 752, 758–59 (7th Cir. 2005). To impose such sanctions, courts must find that: "(1) there was a duty to preserve the specific documents and/or evidence; (2) the duty was breached; (3) the other party was harmed by the breach; and (4) the breach was caused by the breaching party's willfulness, bad faith, or fault." *Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 354 (N.D. Ill. 2016) (citing *Jones v. Bremen High Sch.*, No. 08-cv-3548, 2010 WL 2106640, at *5 (N.D. Ill. May 25, 2010)).

### A.

Marino argues at the outset that Ford's motion comes too late. Ford learned in February 2022 that Marino had traded in his vehicle, but did not raise the issue until filing this motion in May 2023. Ford explains that it waited until the other named plaintiffs either allowed or made clear that they intended to allow inspections of their vehicles, so that it could address all spoliation issues in a single motion. Ford represents that it brought this motion within one month of the final named plaintiffs

3

agreeing to an inspection.[1] Ford also argues that it waited to bring this motion until after targeted discovery into the facts around Marino's disposition of his vehicle. Whatever the merits of Ford's reasons for delay, Marino has not persuaded me that the delay was prejudicial to him or offered Ford a tactical advantage, nor do factors other than the delay itself counsel in favor of finding the motion untimely. *See Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009) (finding that, though spoliation motion could have been brought much sooner, it was timely because dispositive motions had not been filed, it was not brought on the eve of trial, and granting the motion would not require reopening of discovery). I therefore find that the motion is timely.

B.

"A party has a duty to preserve evidence 'that it has control over and which it reasonably knows or can foresee would be material (and thus relevant) to a potential legal action.'" *Cohn*, 319 F.R.D. at 354 (quoting *Jones*, 2010 WL 2106640, at *6). Marino does not dispute that he knew or could foresee that his vehicle would be relevant to this suit, especially once the suit was initiated.

---

[1] Plaintiffs Dougherty, McDonald, and Orndorff also apparently disposed of their vehicles prior to inspection. Orndorff's claims have been dismissed with prejudice by stipulation, ECF 166, and Dougherty and McDonald's claims are currently in arbitration, ECF 200.

4

Rather, he contends that he was not obligated to keep his vehicle beyond the lease term. And in his view, because Ford only requested an inspection after the lease was set to end, it is not important that he returned the vehicle five months prior to the lease's end date.

In a persuasive decision, the Fourth Circuit considered whether a plaintiff had a duty to preserve a vehicle at the heart of the litigation, even though the vehicle belonged to someone else. *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). The court concluded that even if a party does not control the evidence, "he still has an obligation to give the opposing party notice of access to the evidence" or of its possible disposition. *Id.* (citation omitted). The question presented here is not even as close as the one in *Silvestri*. Here, not only did Marino have the ability to provide Ford access to the vehicle, but he actually controlled it for about 21 months after commencing his suit. Though Marino was not required to retain the vehicle beyond the termination date of the lease, he had ample opportunity to offer Ford access to the vehicle or at the very least notify Ford that he would be trading it in. Unlike the plaintiff in *Russo v. BMW of North America, LLC*, cited by Marino, Marino never offered

5

to make his vehicle available for inspection. 951 N.Y.S.2d 83, 2010 WL 8389443 (Sup. Ct. 2010), *aff'd* 920 N.Y.S.2d 64 (2011).[2]

By trading in his vehicle with no notice to Ford, Marino breached his preservation duty. *See Doyle v. Chrysler Grp. LLC*, No. SACV 13-00620 JVS (ANx), 2014 WL 7690155, at *3 (C.D. Cal. Oct. 9, 2014) (finding breach of preservation duty where plaintiff in vehicle defect class action traded in her vehicle after contacting her attorneys but before filing suit), *rev'd and remanded on other grounds*, 663 F. App'x 576 (9th Cir. 2016). Though, as Marino argues, the vehicle was not destroyed and it may have been (and may still be) possible for Ford to track down the vehicle after the trade-in, the focus of this inquiry is on Marino's conduct, not Ford's.[3] Adopting Marino's position would allow parties to dispose of evidence without destroying it and leave it to the opposing party to locate the evidence and conduct

---

[2] *Zeitz v. Innsbruck Golf Resort, Inc.*, is also distinguishable. No. 2:15-CV-00218-RWS, 2016 WL 6193475 (N.D. Ga. Oct. 24, 2016). There, the defendant returned a leased golfcart as previously planned two days after the relevant incident, but prior to the start of any litigation and with assurances from the plaintiff after the incident that he had no intention to sue the defendant. *Id.* at *3.

[3] It is for this same reason that I reject Marino's argument that, even assuming Ford could have known about the lease's end date because its affiliate Ford Motor Credit Company financed the lease --a premise Ford denies--this fact would somehow shift the duty from Marino to Ford.

6

discovery on whether and how its condition had been altered since the trade-in.

The next factor is harm or prejudice. Ford argues that the trade-in of Marino's vehicle caused it harm because it impacts Ford's ability to respond to Marino's allegations and to establish its affirmative defenses. Marino responds that alternative evidence is available to Ford to use in this litigation. However, Marino fails to address how Ford could develop certain affirmative defenses that could explain Marino's issues with the vehicle--like the alleged clunking and banging noises, or the slipping and jerking while changing gears--absent an inspection of the vehicle, such as defenses of intervening cause (Eleventh Affirmative Defense), misuse (Thirteenth Affirmative Defense), or neglect (Fourteenth Affirmative Defense). *See* Answer, ECF 90 at 71–72. Indeed, an inspection of a different plaintiff's vehicle revealed, in Ford's view, possible neglect because all four tires were dry-rotted and worn, which caused noise while driving. *See* ECF 247-8 at 23 (describing inspection of plaintiff Zielinski's vehicle).

Marino further contends that the report prepared by Ford's expert Matthew Fyie, ECF 247-8 ("Fyie Report"), shows that Ford does not need an inspection of Marino's vehicle because, in Marino's view, Fyie reached his conclusions with minimal reliance on the other vehicle inspections. For its part, Ford maintains that Fyie in fact relied on the results of the performed vehicle

7

inspections in reaching his conclusions and emphasizes that Fyie states in the report that, "[a]bsent Mr. Marino's trade in of the vehicle, I would have requested . . . an inspection of it." *Id.* at 10 ¶ 34. Fyie's conclusions indeed appear to rely on the inspections that were performed and he states in the report that he expects he would use the inspection reports as exhibits to support his opinions. *See id.* at 12 ("The Plaintiffs' vehicles that have been inspected to-date are all operating as designed. There are no issues with the transmission performance at this time."); *id.* at 12-13 ("I anticipate that I may use the following exhibits as a summary of or support for my opinions: . . . [t]he reports from the inspections of Plaintiffs' vehicles in Attachment D [and] [p]hotographs from the inspections of Plaintiffs' vehicles."). In any event, even if Ford can support parts of its defense without an inspection of Marino's vehicle, it has lost the central piece of evidence that it could use to establish certain affirmative defenses with respect to Marino's vehicle.

Marino also argues that Ford's actions belie the notion that Ford suffered harm from Marino's trade-in, since Ford did not seek an inspection of the vehicle until after the lease would have ended anyway and, after learning about the trade-in, waited fourteen months to complain at all. I agree that Ford could have sought inspection sooner, but as explained above, the onus is on the party in control of relevant evidence to preserve it and, in this case,

8

provide notice of access for inspection. That burden is properly placed so as to incentivize efficient access to relevant evidence.

Marino's remaining arguments as to the harm factor fail. Though Marino brought his vehicle to Ford dealerships for service, he offers no evidence indicating that these dealerships act as Ford's agents or that Ford was otherwise aware of the service visits. Even were Ford aware of those visits, Marino does not indicate that there would have been an incentive to perform the type of inspection of the vehicle that would be relevant to this litigation. The same goes for Marino's argument that Ford has Marino's service records. Nor does Marino explain how an inspection of the vehicle he received after the trade-in, which is not the type of vehicle involved in this litigation, could remedy Ford's inability to inspect Marino's original vehicle. And while true that Ford might be able to track down the vehicle, doing so would be burdensome and might prove unfruitful if the vehicle has undergone any changes since Marino traded it in, an issue that itself would require discovery and potential motion practice.

The last element justifying spoliation sanctions requires that the "noncomplying party acted *either* with willfulness, bad faith *or* fault." *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (emphases in original) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976) (per curiam); additional citation omitted). Ford argues that Marino's conduct

9

constitutes fault and willfulness, but it does not argue the conduct rose to the level of bad faith.[4] I find that Marino's trade-in of the vehicle, without any notice to Ford, was willful. Not only was the trade-in without notice unreasonable or the result of "extraordinarily poor judgment," which would constitute fault, *Marrocco*, 966 F.2d at 224, but it was done in the context of active litigation centrally involving the vehicle. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed." (citation and quotation marks omitted)).

C.

The remaining question is what sanction is appropriate here. Ford seeks dismissal of Marino's claims. The Seventh Circuit has cautioned that "'dismissal with prejudice is a harsh sanction which should usually be employed only in extreme situations, where there is a clear record of delay or contumacious conduct, or where other less drastic sanctions have proven unavailable.'" *Marrocco*, 966

---

[4] In a footnote in its reply brief, Ford suggests that bad faith is present here. It made no such suggestion in its opening brief, however, so that argument is waived. *See Peterson v. Vill. of Downers Grove*, 103 F. Supp. 3d 918, 925 (N.D. Ill. 2015) ("Arguments raised for the first time in reply briefs are ordinarily waived." (citing *Carroll v. Lynch*, 698 F.3d 561, 564 n.2 (7th Cir. 2012))).

10

F.2d at 224 (quoting *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1061 (7th Cir. 1989)). Marino argues that dismissal is only available as a sanction when a court finds the spoliating party acted in bad faith. But that position is difficult to square with the Seventh Circuit's decision in *Marrocco* to affirm a district court's dismissal sanction for spoliation where the dismissed party's conduct had risen only to the level of fault. *Id.* at 224–25; *see also Greviskes*, 417 F.3d at 759 ("Dismissal is appropriate where a party has displayed fault, bad faith, or willfulness." (citing *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996))).

There are two considerations which, taken together, lead me to conclude that dismissal, rather than a lesser sanction, is warranted in this case. The first is the already discussed prejudicial effect the loss of Marino's vehicle has on Ford's ability to prove its possible affirmative defenses. *See also Erlandson v. Ford Motor Co.*, No. 08-CV-1137-BR, 2009 WL 3672898, at *6 (D. Or. Oct. 30, 2009) ("[T]here is not any adequate substitute for the vehicle itself in adjudicating Plaintiffs' claims and Defendant's ability to evaluate and to defend against those claims. Thus, a lesser sanction than dismissal will not cure the prejudice to Defendant."); *Jordan v. Ford Motor Co.*, No. 2:09-cv-0865-HRH, 2010 WL 11627610, at *7 (D. Ariz. Apr. 19, 2010) ("The destruction of the Escort has obscured the factual predicate of

11

the case and has caused defendants significant prejudice, prejudice that cannot be cured by less drastic sanctions than dismissal."); *Woodard v. Ford Motor Co.*, No. 1:11-cv-3092-CL, 2013 WL 3024828, at *5 (D. Or. June 13, 2013) ("Less severe sanctions [than dismissal] would not remedy the prejudice the spoliation caused Ford. Without the ability to inspect the Mustang as it existed at the time of the accident, Ford is precluded from gaining expert testimony as to whether the seatbelt system . . . was the cause of Woodard's injuries."). The second is the fact that, 21 months into this vehicle-centered litigation, and while represented by counsel, Marino traded in the vehicle before his lease ended without any notice to Ford. Dismissing Marino's claims as a sanction for this conduct will hopefully deter similar conduct by other parties in the future. *See Greviskes*, 417 F.3d at 759 (identifying deterrence as an appropriate aim of imposing the sanction of dismissal).

### III.

For the foregoing reasons, Ford's motion for sanctions is granted. Marino's claims are dismissed.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 20, 2023