IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUSTIN O'CONNOR, *et al.*, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 19-cv-5045 |
| v. | ) ) | Judge Jeffrey I. Cummings |
| FORD MOTOR CO., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Ford's fully briefed motion for partial judgment on the pleadings, (Dckt. #432), as to plaintiff Michael Barcelona's claim for violation of the Massachusetts Consumer Protection Law. For the reasons set forth below, Ford's motion for judgment on the pleadings, (Dckt. #432), is denied.

**I.      RELEVANT BACKGROUND**

Plaintiffs Michael Barcelona, Susan Heller, Bryan Smith, Jason Steen, and Stanislaw Zielinski (collectively, "plaintiffs") bring this putative class action against defendant Ford Motor Company ("defendant" or "Ford") for damages allegedly arising out of defendant's sale and lease of 2017 to 2020 Model Year Ford F-150 trucks with defective 10-speed automatic transmissions, i.e., the 10R80 Transmission. Relevant here are the claims of Massachusetts plaintiff, Michael Barcelona, who purchased a 2018 Ford F-150 Crew Cab with a 10R80 Transmission. Specifically, in the Consolidated Amended Complaint ("CAC"), (Dckt. #63), Barcelona alleges as follows.

While shopping for a safe and reliable personal vehicle, Barcelona conducted online research. (*Id*. ¶102). He alleges that the "vehicle specification information and advertising" on Ford's website about the Ford F-150 "touted its performance and reliability." (*Id*.). Specifically, Barcelona recalls Ford's website describing a "top of the line transmission that boasted better fuel performance" and "never indicated that as a sacrifice to fuel economy, the 10-speed transmission and driveline would operate worse than previous models." (*Id*. ¶103). Barcelona "expected an increase in operability and not a step in the opposite direction with this newer design." (*Id*.).

After six months of online research, Barcelona visited a Ford dealership and spoke with a Ford sales representative. (*Id*.). Barcelona alleges that the sales representative "did not tell him that there were any problems with the Vehicle's Transmission, when discussing the Vehicle's features, components and performance." (*Id*.). Ultimately, in June 2018, Barcelona purchased a new 2018 Ford F-150 Crew Cab truck for $45,988.51. (*Id*. ¶104). He quickly began noticing the transmission "slipping" and "jerking" while driving, as well as a "clunking noise during acceleration," harsh shifts, and a "thumping noise" after the truck came to a stop. (*Id*. ¶106). Despite four visits to authorized Ford dealerships seeking a solution and repairs, Barcelona continues to experience the same problems with the vehicle. (*Id*. ¶¶106–110).

Barcelona maintains that at the time he purchased the vehicle, "Ford knew that its F-150 10R80, ten-speed automatic transmissions were defective," but the Ford sales representative did not disclose the defect to him when discussing the features of the vehicle. (*Id*. ¶105). "In reliance on these material omissions and misrepresentations," Barcelona purchased, "then operated the Vehicle, on the reasonable but incorrect belief that his Vehicle's transmission would operate properly as warranted." (*Id*.). According to Barcelona, had he been informed of the

transmission defect prior to or at the time of purchase, he would not have purchased the vehicle or else would have paid significantly less for the vehicle. (*Id*. ¶113). As a result, Barcelona did "not receive the benefit of his bargain" and instead "paid a premium for a defective vehicle which poses a safety hazard to himself, his family, and others." (*Id*.).

Based on these allegations, Barcelona asserted nine claims against Ford in the CAC: (i) breach of express warranty (Count 1), (ii) breach of implied warranty of merchantability and fitness for a particular purpose (Count 2); (iii) violation of the Magnuson Moss Warranty Act (Count 3); (iv) negligence (Count 4); (v) fraud/fraudulent concealment (Count 5); (vi) unjust enrichment (Count 6); (vii) a second claim for breach of the implied warranty of merchantability (Count 14); (viii) a second claim for breach of the implied warranty of fitness (Count 15); and (ix) violation of the Massachusetts Consumer Protection Law (Count 16).

Ford moved to dismiss the CAC pursuant to Rule 12(b)(6) and, on October 19, 2021, the Court (then Judge Dow) issued an order granting in part and denying in part Ford's motion to dismiss. *O'Connor v. Ford Motor Co.*, 567 F.Supp.3d 915 (N.D.Ill. 2021). With respect to Barcelona, the Court dismissed his claims for breach of implied warranty in Count 2 (but only to the extent it was based on the implied warranty of fitness for a particular purpose), Counts 4–6 (negligence, fraud/fraudulent concealment, unjust enrichment), and Counts 14–15 (breach of the implied warranty of merchantability (as duplicative) and implied warranty of fitness for a particular purpose). In addition, the Court dismissed Barcelona's common law fraud claim on the basis that the alleged misrepresentations were "classic statements of puffery" and were thus not actionable. *Id*. at 963.

The Court denied the motion to dismiss with respect to Barcelona's remaining claims, including, as relevant here, his claim for breach of the implied warranty of merchantability and

for violation of the Massachusetts Consumer Protection Law, M.G.L.A. 93A, §2(a) (hereinafter, "Chapter 93A"). In determining Barcelona properly stated a claim under Chapter 93A, the Court held that (1) he did not need to allege that the claimed defect violated a legally required safety standard; and (2) he did not need to send a pre-suit notice to Ford because another Massachusetts plaintiff (since dismissed) had properly done so. *Id*. at 973–75. The Court also determined that Ford's argument (made only in a footnote) that "[t]he Massachusetts Plaintiffs' 93A claim also fails because . . . they have failed to state a claim for common law fraud" was waived because Ford "never develop[ed] this argument or explain[ed] why the Chapter 93A claim is necessarily contingent on Plaintiffs successfully pleading a claim for common law fraud." *Id*. at 975.

Ford filed its answer to the remaining claims on November 4, 2021, and the parties proceeded with extensive fact and expert discovery, which eventually closed on September 23, 2023. (Dckt. #311). The parties have since briefed motions for and against class certification, and multiple *Daubert* motions, which the Court has under advisement or has already decided

In May 2025, the parties conducted a meet and confer regarding Ford's intent to file the instant motion for judgment on the pleadings on Barcelona's claim for violation of Chapter 93A as wholly derivative of his now dismissed fraud claim. During that conference, plaintiffs acknowledged that Barcelona's Chapter 93A claim would be subject to dismissal to the extent it was wholly and solely derivative of his fraud claim, but asserted that his Chapter 93A is actionable to the extent that it is otherwise premised on either an implied warranty of merchantability or an independent violation theory of liability. As such, on May 15, 2025, the parties filed a joint partial stipulation of dismissal with prejudice, (Dckt. #431), which provides as follows:

> IT IS HEREBY STIPULATED to and agreed by and between the parties, by and through counsel, that the individual claim by Plaintiff Michael Barcelona for

4

> violation of the Massachusetts Consumer Protection Law (Count 16) be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) to the extent that it is based on a fraudulent misrepresentation, fraudulent omission, and/or fraudulent concealment theory of liability. For clarity, to the extent that Barcelona alleges a different theory of liability under Count 16—which Ford disputes—that theory of liability is not addressed by this stipulation

(Dckt. #431) (emphasis added). Ford's motion for judgment on the pleadings as to Barcelona's Chapter 93A claim followed and is now ripe for resolution.

**II.  STANDARD**

Rule 12(c) permits a party to move for judgment on the pleadings after the complaint and answer have been filed by the parties. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing Fed.R.Civ.P.12(c)). "A Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). As such, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As with a Rule 12(b)(6) motion, when resolving a motion for judgment on the pleadings, the Court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

"The Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories," *Zall v. Standard Ins. Co.*, 58 F.4th 284, 295 (7th Cir. 2023) (cleaned up); *see also Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 550 (7th Cir. 2022) ("It is factual allegations, not legal theories, that must be pleaded in a complaint.") (cleaned up). "Put another

5

way, federal pleading standards do not 'demand that complaints contain all legal elements (or factors) plus facts corresponding to each.'" *Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022), *quoting Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). Moreover, "when a complaint does present legal theories, those theories may later be altered or refined. *Zall v. Standard Ins. Co.*, 58 F.4th 284, 295 (7th Cir. 2023). Finally, a plaintiff "need not match facts against the elements of a legal theory," *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002), and "specifying an incorrect theory is not a fatal error." *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011). Instead, "[t]he cornerstone at the motion to dismiss stage remains for district courts to treat all allegations as true and to draw all reasonable inferences in the plaintiff's favor." *Zimmerman*, 25 F.4th at 493.

### III. ANALYSIS

Again, Ford seeks judgment on the pleadings with respect to Barcelona's claim for violation of Chapter 93A, arguing that it is wholly and exclusively derivative of his fraud claim and thus falls with that previously dismissed claim. In response, Barcelona does not dispute that his Chapter 93A claim is *partially* derivative of his fraud claim and, as a result, he has already stipulated to the dismissal of his Chapter 93A claim to the extent that it is based on a fraudulent misrepresentation, fraudulent omission, and/or fraudulent concealment theory of liability. According to Barcelona, however, he has sufficiently pled a Chapter 93A claim as either an independent cause of action or as derivative to his breach of implied warranty claim, which did survive Ford's motion to dismiss.

### A. Elements of a Chapter 93A Claim.

Under Chapter 93A, it is unlawful to engage in any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L.A. 93A,

§2(a). A person who has been "injured by another person's use or employment of any method, act or practice declared to be unlawful by section two" may bring a claim for damages or injunctive relief. M.G.L.A. 93A, §9(1). "Such a claim requires a showing of conduct that (1) falls within the penumbra of some common-law, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers or other businesspersons." *Gattineri v. Wynn MA, LLC*, 93 F.4th 505, 511 (1st Cir. 2024) (cleaned up).

The Massachusetts Supreme Judicial Court "has clearly articulated the standard that if a Chapter 93A claim is derivative of other claims which fail as a matter of law, the Chapter 93A claim must also fail." *Gattineri*, 93 F.4th at 511 (cleaned up); *see also Cameron v. FCA U.S., LLC*, 2022 WL 619519, at *3, 184 N.E.3d 801 (Mass.App.Ct. Mar. 3, 2022) ("It is well settled that where a plaintiff's 93A claim is *wholly* derivative of a meritless statutory or common-law claim, the 93A claim must also fail as a matter of law.") (cleaned up and emphasis added). In other words, "[w]here a 93A claim is based on the same economic theory of injury and the same alleged set of facts as another, such that they are factually and legally intertwined, the claims should survive or fail under the same analysis." *McCabe v. Ford Motor Co.*, 774 F.Supp.3d 349, 399 (D.Mass. 2025) (cleaned up), *quoting Iannachino v. Ford Motor Co.*, 888 N.E.2d 879, 889 (Mass. 2008).

However, although "Chapter 93A claims are often linked with and derivative of other statutory and common law claims for relief, it is settled law that Chapter 93A supplies an independent cause of action . . . as long as a litigant offers separate arguments in support of her Chapter 93A claim." *Plourde v. Sorin Grp. USA, Inc.*, 517 F.Supp.3d 76, 94 (D.Mass. 2021) (cleaned up), *quoting Reed v. Zipcar, Inc.*, 883 F.Supp.2d 329, 334–35 (D.Mass. 2012). Indeed,

7

"the definition of an actionable unfair or deceptive act or practice goes far beyond the scope of the common law action for fraud and deceit" and "Massachusetts case law suggests that one difference between a fraud claim and the more liberal 93A is allowance of a cause of action even in the absence of a duty to disclose." *CardiAQ Valve Techs., Inc. v. Neovasc Inc.*, No. 14-cv-12405, 2016 WL 1642573, at *5 (D.Mass. Apr. 25, 2016).

"Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the fact-specific nature of the inquiry." *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 55 (1st Cir. 1998) (cleaned up). As such, "Massachusetts leaves the determination of what constitutes an unfair trade practice to the finder of fact, subject to the court's performance of a legal gate-keeping function." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 69 (1st Cir. 2009).

### B. Plaintiff has sufficiently stated an independent claim for violation of Chapter 93A.

Again, plaintiff has agreed not to pursue any Chapter 93A claim grounded in fraud, but now seeks to proceed under either a Chapter 93A claim derivative of his breach of warranty claim or an independent claim under Chapter 93A. Given the fact specific and broad scope of Chapter 93A, and drawing all inferences in Barcelona's favor, the Court finds that he has sufficiently stated an independent claim under Chapter 93A. Indeed, beyond his solely fraud-based allegations, Barcelona alleges that Ford violated Chapter 93A by "selling a product for personal or household use that was unsafe to use, holding out to the public that its product could be driven safely on the road, and failing to warn consumers that the Class Vehicles contained a Defect that posed a serious safety risk to consumers and the public." (Dckt. #63 ¶466). Barcelona (along with his co-plaintiffs) further alleges he experienced transmission problems (raising serious safety concerns) quickly after purchasing the vehicle, which Ford was unable to

8

repair after four visits for the same problem. *See O'Connor*, 567 F.Supp.3d at 940 ("Imagine discovering that your vehicle will not accelerate as you are attempting to merge onto an interstate highway during rush hour. Or driving in busy traffic when your vehicle deaccelerates unexpectedly, lurches forward unexpectedly, or goes into 'limp mode' and becomes inoperable. Any one of these problems could cause an accident, property damage, and physical injuries.").

Simply put, taken together as a whole, Barcelona has stated an independent claim for violation of Chapter 93A, and the Court declines to dismiss the claim in its entirety simply because his fraud claim was previously dismissed. *See Costa v. FCA US LLC*, 542 F.Supp.3d 83, 100–01 (D.Mass. 2021) ("Taken together, these allegations [of sales of millions of cars with defective headrests, which have not been recalled or repaired] plausibly suggest that [defendant] violated Chapter 93A."); *Cardiaq Valve Techs., Inc. v. Neovasc Inc.*, No. 14-CV-12405-ADB, 2016 WL 1642573, at *4–5 (D.Mass. Apr. 25, 2016) ("[Plaintiff's] Chapter 93A claim incorporates all the allegations of the complaint, not just the fraud count, and a jury will determine if [defendant's] conduct collectively constitutes unfair and deceptive conduct.").

Moreover, the entirety of Ford's position—that Barcelona's Chapter 93A claim must be dismissed as *solely* derivative of his fraud claims—is grounded in a "deep and too-common misunderstanding of federal pleading requirements." *Zall*, 58 F.4th at 295. First, Ford takes Barcelona to task for failing to plead his now asserted legal theories for either a derivative implied warranty claim or an independent Chapter 93A claim. (*See, e.g.*, Dckt. #438 at 6 ("To allow Plaintiffs to assert an unpleaded theory of liability at this juncture . . . would be highly prejudicial to Ford."); 10 ("Barcelona fails to allege such a theory of liability"); 11 ("[T]he CAC's prior paragraphs do not set forth Barcelona's purported theory that Ford violated Chapter 93A by breaching the implied warranty of merchantability.")). But, again, it is well settled that

9

"Rule 8(a) does not require plaintiffs to 'pin' their claim for relief to any particular legal theory at the pleading stage." *Zimmerman*, 25 F.4th at 493; *see also Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018) ("As the Supreme Court and this court constantly remind litigants, plaintiffs do not need to plead legal theories."). Second, Ford takes issue with Barcelona's failure to incorporate and match certain allegations in the complaint with the Chapter 93A claim itself. But plaintiffs "are not required to match their factual allegations to the theories set out in the caption of each count." *Edge Capture L.L.C. v. Barclays Bank PLC*, No. 09 CV 1521, 2011 WL 13254424, at *5 (N.D.Ill. Aug. 30, 2011). Third, accepting Ford's position would require the Court to resolve ambiguities and inferences in *Ford's* favor and against the pleader, which is improper at this juncture. *Forseth*, 199 F.3d at 368.

Finally, contrary to Ford's position, the Court's decision in *McCabe v. Ford*, 774 F.Supp.3d at 349, to dismiss a very similar Chapter 93A claim as wholly derivative of an insufficient fraud claim does not mandate the same result here. In *McCabe*, the District Court of Massachusetts reached its conclusion based on plaintiffs' concession (which they now dispute) that the Chapter 93A claims were based *solely* on the same conduct alleged in the misrepresentation and fraudulent omission claims. Barcelona has made no such concession in this case and instead offered additional arguments in support of his Chapter 93A claim. *See Reed*, 883 F.Supp.2d at 335 ("As long as a litigant offers separate arguments in support of her Chapter 93A claim, it may be entertained irrespective of whether other colorable bases for relief remain."). More importantly, the "decision of a district court outside of the Seventh Circuit is not binding on this Court," *Piasa Com. Interiors, Inc. v. J.P. Murray Co.*, No. 07-617-DRH, 2010 WL 3490985, at *2 (S.D.Ill. Aug. 31, 2010), unless, of course, the doctrines of law of the case,

10

res judicata, or collateral estoppel are in play. Ford has not, however, relied on those doctrines here.

### C. The Court need not address the parties' remaining arguments.

Having determined that Barcelona has stated a plausible independent claim for a violation of Chapter 93A, the Court need not determine whether he has also asserted a plausible claim for Chapter 93A that is derivative of his breach of implied warranty claim. Indeed, "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original). As such, where—as here—"a plaintiff states a plausible claim for relief under one discernable legal theory," [the court] start[s] and end[s] there." *Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 723–24 (7th Cir. 2025). Similarly, the Courts's finding of a plausible Chapter 93A claim renders Barcelona's request to amend moot. Of course, whether Barcelona can ultimately prevail on any Chapter 93A claim—whether at summary judgment or trial— remains to be seen and the Court expects that, at those stages, Barcelona will fully develop his theory of liability under Chapter 93A as appropriate.

### CONCLUSION

For the foregoing reasons, Ford's motion for judgment on the pleadings, (Dckt. #432), is denied.

**DATE:** **January 26, 2026**

**Jeffrey I. Cummings**
**United States District Judge**

11